Michael O. Azat (Bar No. CA00156)
 mike.azat@azatlaw.com
1785 Locust St., Ste 3
Pasadena, CA 91106
Phone: (626) 696-3400

Attorneys for Plaintiff, Laureatus Group LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LAUREATUS GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| v. | ) | |
| | ) | **COMPLAINT** |
| UNITED STATES DEPARTMENT OF THE | ) | |
| TREASURY, JANET YELLEN, in her official | ) | |
| capacity as the Secretary of the United States | ) | |
| Department of the Treasury; MERRICK | ) | |
| GARLAND, in his official capacity as the Attorney | ) | <u>JURY TRIAL DEMANDED</u> |
| General of the United States; DEPOSITORY | ) | |
| TRUST COMPANY, a New York limited | ) | |
| purpose trust company; DEPOSITORY TRUST & | ) | |
| CLEARING CORPORATION, a New York | ) | |
| Corporation; JOHN DOE Nos. 1 to 25, and the | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

Plaintiff, Laureatus Group, LLC ("Plaintiff" or "Laureatus"), by and through its
undersigned counsel, alleges for its Complaint, with knowledge as to its own acts and status and
events taking place in its presence, and upon information and belief as to all other matters, as
follows:

## NATURE AND SUMMARY OF THIS ACTION

1.      One of the foundational principles of American law is that the government may not unilaterally and permanently deprive its citizens of their property or possessions without affording them the process due and required under our Constitution, statutes, and common law.

2.      This is an action to recover over $700 billion in cash funds ("Funds") that were illegally confiscated by the government, without notice or due process, during an attempted transfer from the Bank of Taiwan to an American company, via Automated Customer Account Transfer Service ("ACATS") facilitated by U.S.-based Wachovia Securities (now Wells Fargo) ("Wachovia").

3.      In November of 2004, Merchants International Holding Ltd. ("Merchants"), an American company doing business with wealthy foreign nationals, attempted to transfer over $700 billion in cash funds into the United States for the purpose of infrastructure development.

4.      Although the transfer of Funds was initiated by the Bank of Taiwan, these funds were neither received by Wachovia, nor returned to the Bank of Taiwan.

5.      Instead, the United States government lawlessly intercepted, stole, confiscated, seized, and/or illegally exacted the Funds, without any notice or due process whatsoever, by means of an intentional and knowing violation of the established requirements of law designed to protect the rights of companies like Merchants.

6.      For the last twelve years, the legal owners of the Funds have used every reasonable, ordinary and legal method to trace these missing Funds and regain possession of them.  To date, there has been no success in securing their return.

7.      Accordingly, following the denial of formal written demand under the federal asset forfeiture laws, Laureatus, as the corporate successor to Merchants, brings this action to recover

the Funds and compel the government to comply with the long-established constitutionally and statutorily-mandated procedures that stand as bulwarks against the unilateral and permanent deprivation of its citizens' property and possessions.

8.     At the very least, Laureatus is entitled to, among other things, notice of the statutory authority and allegations of fact pursuant to which the Funds have been seized and/or confiscated, an opportunity to be heard and present arguments and/or evidence in opposition to the seizure and/or confiscation, an independent full and fair adjudication, by an impartial and duly constituted authority, of the lawfulness of the seizure and/or confiscation, and judicial review thereof.

## THE PARTIES

9.     Plaintiff Laureatus Group, LLC is a privately-held Nevada limited liability company that was formed on April 13, 2006, with its principal place of business in Carson City, Nevada.

10.     Defendant United States Department of the Treasury ("Treasury") is an executive department and administrative agency of the United States of America that is charged with oversight of the nation's money and finance.

11.     Defendant Janet Yellen is the Secretary of the Treasury.  In such capacity, she possesses authority to direct the action and operations of that department.  She is sued in her official capacity.

12.     Defendant Merrick Garland is the Attorney General of the United States.  In such capacity, he is responsible for investigating and prosecuting criminal violations of federal laws. He is sued in his official capacity.

13.     Defendant United States of America is a governmental entity that has waived its sovereign immunity for the claims that Plaintiff asserts against it.  At all relevant times, Defendant

United States of America directed, exercised jurisdiction and control over, and otherwise oversaw the Department of the Treasury and its agents acting at its direction ("Government").

14.     Defendant Depository Trust & Clearing Corporation ("DTCC") is a New York corporation with its principal place of business in New York City, New York.  DTCC is an industry-owned firm, meaning it is owned by the brokerage firms, investment and clearing banks, and mutual fund companies that are members of the national markets.  DTCC, through its subsidiaries, provides clearance, settlement and information services for equities, corporate and municipal bonds, government and mortgage backed securities, over-the-counter derivatives and emerging market debt trades.

15.     Defendant Depository Trust Company ("DTC") is a limited purpose trust company formed under the Banking laws of New York, with its principal place of business in New York City, New York.  DTC is the world's largest securities depository and clearinghouse for settlement of securities trading activity.  DTC is a wholly-owned subsidiary of DTCC and is a SEC-registered clearing agency that operates an automated, centralized system for book-entry transfers of securities positions among its participants, the beneficial owners of the securities, in accordance with their instructions.   The changes in beneficial ownership of securities resulting from transactions that are cleared and settled at the National Securities Clearing Corporation are implemented by book-entry transfers among brokers' accounts at DTC.

16.     Defendants "JOHN DOE" Nos. 1 to 25 are additional officers and representatives of Defendants, personally responsible for implementing the specific directions that resulted in the theft, seizure, and/or confiscation of the Funds in violation of Plaintiff's constitutional and statutory rights.  They are sued in their individual and official capacities.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

**STANDING**

17.     Plaintiff is authorized to bring the claims that are the subject of this action because it is the corporate successor to Merchants as the result of changes to Merchants' corporate form that resulted in the transfer of the claims to Plaintiff by operation of law.

**JURISDICTION AND VENUE**

18.     This action is brought pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 551 *et seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201, for vindication of rights under the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983 ("CAFRA"), and the Fourth and Fifth Amendments to the United States Constitution.

19.     This action is also brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, *et seq*.

20.     This Court has jurisdiction under 28 U.S.C. §§ 1331(a) (federal question), 1346(b) (FTCA), 1356 (seizures not within admiralty and maritime jurisdiction), 1361 (Mandamus) and 2201 (Declaratory Judgments); under 5 U.S.C. § 702 (APA); and by virtue of its inherent equitable powers.

21.     Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(e) because a substantial portion of the events, and the acts complained of giving rise to this action, occurred in this district.

22.     To the extent that exhaustion of administrative remedies is required with respect to Plaintiff's claims, Plaintiff has timely presented its claims to Defendants and exhausted all administrative remedies and has complied with the requirements of the FTCA prior to bringing this action.

## FACTUAL ALLEGATIONS

**Merchants' Investment Plans**

23.     On June 27, 2001, Merchants was incorporated at the Indian World Trade Center in Pine Ridge, South Dakota.

24.     One of Merchants' business purposes was to negotiate for, and assume fiduciary responsibility for, the transfer of more than $2 trillion into the United States for business investment purposes.

25.     To that end, Merchants engaged Tropos Capital Corporation of America ("Tropos"), a Delaware-based corporation, to manage the investment of $700 billion of the proceeds.

26.     On or about July 21, 2004, Merchants and its General Manager successfully solicited a two trillion, one-hundred billion U.S. dollars ($2,100,000,000,000.00) investment from a wealthy Taiwanese investor, Mr. Tien Chuan Wu.

27.     Mr. Wu maintained his funds in a savings account at the Bank of Taiwan, a Taiwanese bank.

28.     The parties intended to transfer Mr. Wu's investment funds from his savings account at the Bank of Taiwan to Merchants in the United States.

29.     Wachovia, whose facility was based in the United States, was engaged in order to facilitate the transfer using the ACATS system.

**The ACATS System**

30.     ACATS is an almost entirely electronic system which executes the transfer of financial securities from a trading account at one institution to the trading account at another.

31.     ACATS was developed by the National Securities Clearing Corporation ("NSCC"), now a subsidiary of DTCC, a private holding company owned collectively by banks and financial institutions.

32.     ACATS handles the settlement of the vast majority of securities transactions in the United States.

33.     ACATS offers several benefits compared to other bank-to-bank transfer services, including its ability to:

- Accommodate various processing capabilities, including automated CPU-to-CPU transfers and secure internet communications;

- Centralize, standardize, automate, and accelerate the transfer of customer accounts between two NSCC Members or between NSCC Members and DTC bank participants;

- Create cost saving opportunities;

- Permit broker dealer members to comply with the Financial Industry Regulatory Authority ("FINRA") requirements regarding the transfer of customer accounts; and

- Support multiple processing cycles, including accelerated settlement.

34.     For reasons of convenience, the parties to the subject transaction opted to transfer the cash Funds via ACATS.

**The Intercepted Transfer of the Funds**

35.     The parties authorized the Bank of Taiwan to transfer Funds of over $700 billion to Wachovia.  On or about August 25 and 30, 2004, the Bank of Taiwan initiated test transfers of at least $700 billion to Wachovia through ACATS.

7

36.     An actual transfer of at least $700 billion was made on or about November 4, 2004. The Funds did indeed leave the Bank of Taiwan and were no longer reflected on the Bank of Taiwan's books.

37.     The Bank of Taiwan electronically sent the Funds to Wachovia in the United States via Wachovia's intermediary back office operation entities, which included the DTC, DTCC, Cede & Co., and/or First Clearing, LLC (collectively, the "Clearing Entities").

38.     The Funds sent from the Bank of Taiwan, however, were never credited at Wachovia.

39.     Instead, the Funds were held up by a United States Government-issued chill[1] or freeze[2] order and action, which are generally imposed by the U.S. Treasury Department or the Federal Reserve on the handler of funds, such as a clearing facility.

40.     As a result, the Funds bound for Wachovia via ACATS were halted, either at DTC, Cede & Co., or First Clearing, LLC, or a combination of all three.

41.     The Funds were then moved to the risk and compliance side of Wachovia's Clearing Entities, where they were placed in chill or suspense.

42.     Because funds that are held or sequestered at the urging of a Government agency are not book-entered onto the operations side of the Clearing Entities, the Funds at issue did not come onto DTC's systems via Cede & Co. and were never book-entered by DTC.

---

[1] A "chill" is a restriction placed by DTC on one or more of DTC's services, such as limiting a DTC participant's ability to make a deposit or withdrawal of the security at DTC. A chill may remain imposed on a security for just a few days or for an extended period of time depending upon the reasons for the chill and whether the issuer or transfer agent corrects the problem.

[2] A "freeze" is a discontinuation of all services at DTC as it relates to a particular transfer or transaction. Freezes may last a few days or an extended period of time, depending on the reason for the freeze. If the reasons for the freeze cannot be rectified, then the security will generally be removed from DTC, and securities transactions in that security will no longer be eligible to be cleared at any registered clearing agency.

43.     DTC is a registered clearing agency that provides, *inter alia,* oversight for securities transfers, including clearance and settlement services for most transactions that involve equities, corporate or municipal debt, exchange-traded funds and money market instruments.

44.     DTC has broad authority to suspend or terminate the delivery of transaction services to its participant institutions, including the right to suspend action on a particular transaction or transactions, but when it does so, under its own operating rules, it must provide notice of such actions to the affected participant.

45.     The Clearing Entities began the internal process of communicating with the Government regarding the disposition or resolution of the Funds.

46.     At some point, the Funds were then moved from the Clearing Entities to Defendant Treasury and were never book-entered or received by Wachovia or returned to the Bank of Taiwan.

47.     Plaintiff has learned that the Bank of Taiwan's records regarding this ACATS transfer were delivered to the Bank of Taiwan's Risk and Compliance Legal Department on November 20, 2004, based upon a "Request for Mutual Assistance Securities Enquiry."  This suggests that a Government agency or securities regulator had made an inquiry to the Bank of Taiwan about this series of transactions and the Bank of Taiwan had forwarded the records to their legal department for review and response.

48.     None of the lawful parties to the transaction were ever notified as to the reason why the Funds were intercepted.  Nor has any party or participant to the transaction received notice of a chill or freeze.

49.     For some unknown reason, these Funds simply disappeared.

50.     Following the Funds' disappearance, various Government officials engaged in a years-long campaign of misdirection and concealment to prevent Plaintiff from determining what

happened to the Funds, their precise location, and how their lawful return could be effectuated. Plaintiff relied on the assertions and instructions from different Government officials that Plaintiff was acting appropriately by negotiating the return of the funds through political channels instead of pursuing its claims in court, which Plaintiff was told would frustrate the officials' ability to facilitate the return of the Funds.  As a result, Plaintiff was induced to wait until now to bring this action.

51.     In the aftermath of the Funds' disappearance, then-Treasury Secretary, Henry M. Paulson, and then-Chairman of the Federal Reserve, Ben S. Bernanke, after confirming that Treasury possessed at least a significant portion of the Funds, both promised Plaintiff resolution. Timothy D. Adams, the then-Under Secretary of the Treasury for International Affairs, in fact, negotiated the terms of that resolution, to which Plaintiff agreed in writing.  On two separate occasions, however, these officials at the last minute declined to execute the agreement.  On information and belief, Paulson, Bernanke, and Adams declined to execute the agreement because (a) then-President of the New York Federal Reserve, Timothy Geithner, was personally involved in the freezing of the Funds, was therefore at least partially responsible for the Funds disappearance, and faced legal and political liability as a result; and (b) various members of Congress and Executive Branch officials had impermissibly redirected portions of the Funds for purposes other than their return to the Bank of Taiwan or disbursement to Plaintiff.

52.     Similarly and subsequently, the then-Director of the Federal Reserve Board's Management Division, Richard "Dick" A. Anderson, again confirmed that the ACATS transfer from the Bank of Taiwan to Wachovia had occurred, determined the location within the Treasury Department of what remained of the Funds, and reported these facts to Plaintiff's Board of Directors.   Various Treasury officials, including Bernanke; his assistant, Rita C. Proctor;

Confidential Assistant to the Treasury Secretary, Cheryl L. Matera; Counsel to the Inspector General, Richard Delmar; and Assistant General Counsel for International Affairs, Russell L. Munk, purported to work with Anderson toward finalizing the earlier negotiated resolution but, in actuality and on information and belief, had no intention of doing so because of the exposure faced by Geithner (who had since become Treasury Secretary) for his involvement in the freeze and disappearance of the Funds.

53.     On information and belief, even as recently as July 2016, Delmar himself verified with the Federal Reserve Board's Office of Inspector General that Treasury still possessed what remained of the Funds but, at the instruction of the Board, denied to an agent acting on Plaintiff's behalf that the Funds had *ever* been transferred to the Treasury—the first time that any government official had ever denied Treasury's possession of the Funds.

54.     To date, what remains of the Funds are still believed to be currently in the possession, custody, and control of Defendant Treasury.

## COUNT I – VIOLATION OF FIFTH AMENDMENT RIGHTS

55.     Laureatus repeats and re-alleges the foregoing paragraphs 1 through 54 above, and incorporates them by reference as though fully set forth herein.

56.     The Equal Protection, Due Process, and Takings Clauses of the United States Constitution protect companies from having their property and property rights taken and/or illegally exacted by the Government, in a discriminatory manner, without due process or without just compensation.

57.     Defendants, and each of them, violated the due process rights of Merchants, and Plaintiff as corporate successor to Merchants, by, *inter alia*, stealing, seizing, confiscating and/or illegally exacting the Funds, without providing adequate prior notice of the basis for the

confiscation or a meaningful opportunity to challenge it, failing to provide a prompt post-deprivation hearing and a prompt judicial determination of the legality of the confiscation of the Funds, failing to provide a statement of reasons, failing to provide any finding of wrongdoing, failing to specify any substantive criteria for the decision to confiscate the Funds, and failing to afford or submit to any process whatsoever. Defendants, and each of them, have thereby deprived Merchants, and Plaintiff as corporate successor to Merchants, of property without due process of law, in violation of the Fifth Amendment to the United States Constitution.

58.     Defendants further acted arbitrarily and capriciously in seizing and/or confiscating Plaintiff's asset, in violation of Plaintiff's rights to substantive due process under the Fifth Amendment to the United States Constitution.

59.     Moreover, Defendants' theft, seizure, and/or confiscation of the Funds, without any regulatory, statutory, or other authority, and without any process whatsoever, was deliberately disparate and discriminatory to the Defendants' treatment of others similarly situated, without a rational basis for such difference in treatment, in violation of the Equal Protection rights of Merchants, and Plaintiff as corporate successor to Merchants.

60.     To the extent the proof at or prior to trial shows that Defendants and their agents did in fact act in a governmental capacity or at the direction of the Treasury, the improper conduct described above constitutes the discriminatory interference with the property and property rights of Merchants, and Plaintiff as corporate successor to Merchants, without due process or just compensation.

61.     As a direct result of the Defendants' violations of the United States Constitution, Merchants, and Plaintiff as corporate successor to Merchants, has suffered harm, including but not limited to monetary damage, as a direct and proximate result of the Government's theft, seizure,

and/or confiscation of billions of dollars of property interests in the Funds.  As a result of the conduct alleged herein, Defendants, and each of them, are liable to Plaintiff and Plaintiff is entitled to relief.

## COUNT II – UNREASONABLE SEIZURE IN VIOLATION OF FOURTH AMENDMENT

62.     Laureatus repeats and re-alleges the foregoing paragraphs 1 through 61 above, and incorporates them by reference as though fully set forth herein.

63.     Defendants' actions described herein violated Plaintiff's right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution.

64.     The Defendants, and each of them, had actual or constructive knowledge that its, his, or her acts or omissions with respect to Plaintiff violated Plaintiff's right to be free from unreasonable seizure, and each had actual or constructive knowledge that its, his, or her actions, orders, or omissions would lead to such violation.

65.     The Defendants, and each of them, acted under color of authority with deliberate, reckless, or callous indifference to Plaintiff's rights.

66.     Demand has been made to Defendants to return the Funds that were illegally seized.

67.     Defendants, however, have failed and refused, and continue to fail and refuse, to return the Funds to Plaintiff.

68.     The continued retention of the Funds is illegal and constitutes the seizure and deprivation of the Plaintiff's property without due process of law.

69.     As a direct and proximate result, Merchants, and Plaintiff as corporate successor to Merchants, suffered damages, including the value of the Funds converted and amounts expended in pursuit of the Funds.

70.     Plaintiff is also entitled to an injunction compelling the return of the seized Funds.

**COUNT III – UNLAWFULLY WITHHELD OR UNREASONABLY DELAYED**

**AGENCY ACTION – ADMINSTRATIVE PROCEDURES ACT, 5 U.S.C. § 706(1)**

71.     Laureatus repeats and re-alleges the foregoing paragraphs 1 through 70 above, and incorporates them by reference as though fully set forth herein.

72.     The Administrative Procedures Act explicitly provides a right of judicial review to a person "adversely affected or aggrieved" by an agency's "fail[ure] to act" or other agency action. 5 U.S.C. § 702.

73.     The Treasury is an agency within the meaning of 5 U.S.C. § 552(f).

74.      The "agency action" that is covered by the APA includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent to denial thereof, or failure to act." 5 U.S.C. § 551(13).

75.     Defendants' theft, confiscation, and/or seizure of Plaintiff's Funds constitutes a "final action" under 5 U.S.C. § 704.

76.     When a proper showing is made, "[t]he reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed . . . ."  5 U.S.C. § 706(1)

77.     By diverting the Funds and exercising control and dominion over them, to the exclusion of Plaintiff, Defendants have stolen, seized and/or confiscated property belonging to Plaintiff, without observance of procedure required by law.  5 U.S.C. § 706(2)(D).

78.     Defendants have willfully and unreasonably delayed in the adjudication of Plaintiff's right to the Funds.

79.     Plaintiff has filed a Seized Asset Claim with Defendants asserting ownership of the Funds and seeking their immediate return.

80.     The Civil Asset Forfeiture Reform Act, 18 U.S.C. § 983(a)(3)(A), provides, in pertinent part that "[n]ot later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules of Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint."

81.     More than 90 days have elapsed since Plaintiff's submission of its Seized Asset Claim asserting ownership of the Funds and seeking their immediate return.

82.     No proceedings relating to the Funds have been instituted in any court.

83.     In the absence of certain criminal proceedings, the Civil Asset Forfeiture Reform Act, 18 U.S.C. § 983(a)(3)(B) provides as follows:  "If the Government does not  . . . file a complaint for forfeiture or return the property, in accordance with subparagraph (A) . . . the Government shall promptly release the property pursuant to regulations promulgated by the Attorneys General, and may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense."

84.     In violation of 18 U.S.C. § 983(a)(3), Defendants, and each of them, in their official capacities and under color of legal authority, have not caused a forfeiture complaint to be filed within ninety days of Plaintiff's submission of its Seized Asset Claim.

85.     By failing to cause the filing of a forfeiture complaint within ninety days of Plaintiff's submission of its Seized Asset Claim, Defendants, and each of them, have unlawfully withheld and unreasonably delayed agency action required under CAFRA, in violation of and as actionable under the Administrative Procedures Act, 5 U.S.C. § 706(1).

86.     As a result of Defendants' unlawful withholding and unreasonable delay of agency action, Plaintiff has suffered legal wrong and has been adversely affected and aggrieved.

87.     By reason of the foregoing, Defendants, and each of them, should be compelled to return the Funds to Plaintiff.

88.     By reason of the foregoing, Defendants, and each of them, should be barred from taking any further action to effect the civil forfeiture of the Funds.

89.     Alternatively, by reason of the foregoing, Defendants, and each of them, should be compelled to cause the prompt commencement of a formal proceeding for forfeiture of the Funds.

## COUNT IV – ARBITRARY AND CAPRICIOUS ACTIONS IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT (5 U.S.C. § 706(2)(A))

90.     Laureatus repeats and re-alleges the foregoing paragraphs 1 through 89 above, and incorporates them by reference as though fully set forth herein.

91.     The Administrative Procedures Act provides that "[t]he reviewing court shall . . . hold unlawful an set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2).

92.     The Court may further review and set aside final agency action in excess of statutory jurisdiction, authority, or limitations, or without observance of procedure required by law.  5 U.S.C. §§ 706(2) (C)-(D).

93.     Defendants' theft, confiscation, and/or seizure of Plaintiff's Funds constitutes a "final action" under 5 U.S.C. § 704.

94.     Defendants' actions of stealing, confiscating and/or seizing the Funds is contrary to constitutional right, power, privilege, or immunity. 5 U.S.C. § 706(2)(B).  Defendants lack the authority to deprive citizen of their property without lawful reason, notice, or due process.

95.     Any confiscation and/or seizure of Plaintiff's Funds is unwarranted by the facts.  5 U.S.C. § 706(2)(F).

96.     Defendants' actions of stealing, confiscating and/or seizing the Funds, without any reason, notice, or due process was arbitrary and capricious, abuses agency discretion, and was otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).

97.     As a result of Defendants' unlawful withholding and unreasonable delay of agency action, Plaintiff has suffered legal wrong and has been adversely affected and aggrieved.

98.     By reason of the foregoing, Defendants, and each of them, should be compelled to return the Funds to Plaintiff.

99.     By reason of the foregoing, Defendants, and each of them, should be barred from taking any further action to effect the civil forfeiture of the Funds.

100.    Alternatively, by reason of the foregoing, Defendants, and each of them, should be compelled to cause the prompt commencement of a formal proceeding for forfeiture of the Funds.

**COUNT V – CONVERSION - FEDERAL TORT CLAIMS ACT (28 U.S.C. § 1346)**

101.    Laureatus repeats and re-alleges the foregoing paragraphs 1 through 100 above, and incorporates them by reference as though fully set forth herein.

102.    Plaintiff, as corporate successor to Merchants, is the rightful owner of the Funds and is entitled to possession of said Funds.

103.    Defendants have a nondiscretionary, mandatory duty to adhere to due process of law and to respect the legal rights of affected parties when taking private property.

104.    Defendants, and each of them, have intentionally interfered with Plaintiff's possession of the Funds by stealing, seizing and/or confiscating the Funds and converting those Funds to Defendants' own use.

105.     Despite Plaintiff's demand for immediate return of the Funds, Defendants, and each of them, have failed and refused, and continue to fail and refuse, to return the Funds to Plaintiff, which constitutes the tort of conversion under District of Columbia law.

106.     The foregoing conduct was undertaken by Defendants "JOHN DOE" Nos. 1 to 10, presently unknown federal employees of the Treasury, acting within the scope of his or her employment.

107.     Under the Federal Tort Claims Act, Defendant United States of America is liable to Plaintiff for the unlawful actions of Defendants "JOHN DOE" Nos. 1 to 10, as he or she was acting within the scope of employment as an agent of the United States Treasury.

108.     As a direct and proximate result of Defendants, Merchants, and Plaintiff as corporate successor to Merchants, suffered damages, including the value of the Funds converted and amounts expended in pursuit of the Funds.

109.     On July 24, 2020, the Plaintiff presented to the Defendant United States of America, through its Department of Treasury, the claim is attached hereto as **Exhibit A** and incorporated herein by reference.

110.     Defendant United States of America, acting through its Department of Treasury, formally denied the Plaintiff's claim on February 18, 2022 and gave notice to the Plaintiff that it could institute this suit in the United States District Court within six months of the date of mailing of the Department of the Treasury's denial letter.  A true and correct copy of this letter denying the Plaintiff's claim is attached hereto as **Exhibit B** and incorporated herein by reference.

## COUNT VI – *BIVENS* CLAIM AGAINST JOHN DOE DEFENDANTS FOR

## VIOLATION OF FOURTH AMENDMENT

111.    Laureatus repeats and re-alleges the foregoing paragraphs 1 through 110 above, and incorporates them by reference as though fully set forth herein.

112.    This claim is asserted against Defendants "JOHN DOE" Nos. 1 to 10, who are presently unknown agents of the Government responsible for the theft, seizure, and/or confiscation of the Funds.

113.    Defendants "JOHN DOE" Nos. 1 to 10 violated Plaintiff's right to be free from unreasonable seizure under the Fourth Amendment to the United States Constition, by effecting the unlawful theft, seizure, and/or confiscation of the Funds, without notice, reason, or legal process.

114.    At all material times, Defendants "JOHN DOE" Nos. 1 to 10 were each aware that he or she was violating Plaintiff's rights, yet purposefully continued with the unlawful violation.

115.    Defendants "JOHN DOE" Nos. 1 to 10 were acting under color of law by exercising power made possible by federal law.

116.    Defendants "JOHN DOE" Nos. 1 to 10 acted with deliberate indifference to Plaintiff's rights and failed to perform his or her duties as a reasonable and prudent Government agent under all of the facts and circumstances.

117.    As a direct and proximate result of Defendants "JOHN DOE" Nos. 1 to 10's violations of Plaintiff's constitutional rights, Plaintiff sustained injuries and damages, including the loss of use of the Funds wrongfully stolen, seized, and/or confiscated, as well as amounts expended in pursuit of the Funds.

## COUNT VII – WRIT OF MANDAMUS (28 U.S.C. § 1361)

118.    Laureatus repeats and re-alleges the foregoing paragraphs 1 through 117 above, and incorporates them by reference as though fully set forth herein.

119.    Plaintiff seeks a writ of mandamus to compel Defendants "to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

120.    Defendants are charged with a nondiscretionary, mandatory official duty to adhere to due process of law and to respect the legal rights of affected parties when taking private property.

121.    Defendants have unlawfully and unreasonably delayed and withheld the adjudication of Plaintiff's right to return of the Funds, despite Plaintiff's demand and despite having all information and supporting documents necessary to do so.

122.    As a direct and proximate result of Defendants' unlawful withholding of the Funds and unreasonable delay of agency action, Plaintiff suffered damages, including the loss of use of the Funds wrongfully stolen, seized and/or confiscated, as well as amounts expended in pursuit of the Funds.

123.    Prior to initiating this action, Plaintiff made a formal demand that Defendants fulfill their statutory duties as set forth in this Complaint, but Defendants refused and continue to refuse to do so, so that Plaintiff has no remedy except for this action seeking to compel Defendant to fulfill  their clear legal duty.

124.    Plaintiff, therefore, seeks an order compelling Defendants to adjudicate its claim to return of the Funds without further delay.

## COUNT VII – DECLARATORY JUDGMENT (28 U.S.C. § 2201)

125.    Laureatus repeats and re-alleges the foregoing paragraphs 1 through 124 above, and incorporates them by reference as though fully set forth herein.

126.    There is a case of actual controversy between Plaintiff, on the one hand, and the Defendants, on the other, concerning whether Plaintiff is the rightful owner of the Funds and whether Defendants are required to return the Funds to Plaintiff.

127.    Accordingly, pursuant to 28 U.S.C. § 2201, Plaintiffs request this Court to declare the rights of Plaintiff and the obligations of Defendant and enter a final judgment:

    A.  Declaring that Plaintiff is the rightful owner of the Funds; and

    B.  Ordering Defendants to immediately pay out those Funds, currently being retained contrary to law, to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons stated above, Plaintiff demands judgment in its favor against the Defendants, and each of them, as follows:

    A.    Finding that Defendants have stolen, seized, confiscated, and/or illegally exacted the property of Plaintiff in violation of the Due Process, Equal Protection and Takings Clauses of the United States Constitution;

    B.    Declaring Defendants' unreasonable delay and failure to adjudicate Plaintiff's claim to return of the Funds to be in direct violation of the Administrative Procedure Act and federal regulations;

    C.    Declaring that Defendants' actions were arbitrary, capricious, an abuse of discretion, and not in accordance with law;

    D.    Declaring that Plaintiff is the rightful owner of the Funds;

    E.    Ordering Defendants to immediately pay out those Funds, currently being retained contrary to law, to Plaintiff;

    F.    Determining and awarding to Plaintiff the damages sustained by it as a result of the violations set forth above from Defendants;

G.      Issuing a Writ of Mandamus compelling Defendants to adjudicate Plaintiff's right
        to return of the Funds;

H.      Awarding Plaintiff the costs and disbursements of this action, including reasonable
        attorneys' and experts' fees, costs and expenses;

I.      Pre-judgment and post-judgment interest; and

J.      Granting such other and further relief the Court may deem just and proper under
        the circumstances.


DATED:       July 18, 2022              Respectfully Submitted,


                                        **THE AZAT LAW GROUP**


                                        By:   _/s/ Michael Azat_____
                                              Michael O. Azat (Bar No. CA00156)
                                               mike.azat@azatlaw.com
                                              Attorney for Plaintiff

# EXHIBIT A

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: <br><br> General Counsel <br> United States Department of the Treasury <br> Washington, DC 20220 | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. <br><br> Laureatus Group, LLC, a Nevada limited liability company <br> 255 Rolling Ridge Road, Rock Hill, South Carolina 29730 <br> (By counsel: Andre Hollis, Tiger International, <br>      344 W. Maple Ave, Ste 279, Vienna, VA 22180) |

| 3. TYPE OF EMPLOYMENT <br> ☐ MILITARY  ☒ CIVILIAN | 4. DATE OF BIRTH <br> N/A | 5. MARITAL STATUS <br> N/A | 6. DATE AND DAY OF ACCIDENT <br> 11/04/2004  Thursday | 7. TIME (A.M. OR P.M.) <br> N/A |
|---|---|---|---|---|

**8. BASIS OF CLAIM** (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

See Attachment 8.

**9.  PROPERTY DAMAGE**

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

NONE

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

$700 billion in cash funds that were illegally confiscated by the government, without notice or due process, during an attempted transfer from the Bank of Taiwan to an American company, via ACATS.

**10.  PERSONAL INJURY/WRONGFUL DEATH**

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

NONE

**11.  WITNESSES**

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| See Attachment 11 | |

**12. (See instructions on reverse).  AMOUNT OF CLAIM (in dollars)**

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| 700,000,000,000 | 0.00 | 0.00 | 700,000,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). <br><br> *[signature]* | 13b. PHONE NUMBER OF PERSON SIGNING FORM <br><br> 202 527-9705 | 14. DATE OF SIGNATURE <br><br> 7/27/2021 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government.  (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable
95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## ATTACHMENT 8

Laureatus Group, LLC ("Laureatus"), by and through counsel, offers the following summary of the facts and circumstances that form the basis of its claim, with knowledge as to its own acts and status and events taking place in its presence, and upon information and belief as to all other matters, as follows:

## Summary of Claim

1.      One of the foundational principles of American law is that the government may not unilaterally and permanently deprive its citizens of their property or possessions without affording them the process due and required under our Constitution, statutes, and common law.

2.      Laureatus brings this claim pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, *et seq.*, to recover $700 billion in cash funds ("Funds") that were illegally confiscated by the government, without notice or due process, during an attempted transfer from the Bank of Taiwan to an American company, via Automated Customer Account Transfer Service ("ACATS") facilitated by U.S.-based Wachovia Securities (now Wells Fargo) ("Wachovia").

3.      In November of 2004, Merchants International Holding Ltd. ("Merchants"), an American company doing business with wealthy foreign nationals, attempted to transfer over $700 billion in cash funds into the United States for the purpose of infrastructure development.

4.      Although the transfer of Funds was initiated by the Bank of Taiwan, these funds were neither received by Wachovia, nor returned to the Bank of Taiwan.

5.      Instead, the United States government lawlessly intercepted, stole, confiscated, seized, and/or illegally exacted the Funds, without any notice or due process whatsoever, by means of an intentional and knowing violation of the established requirements of law designed to protect the rights of companies like Merchants.

6.      For the last sixteen years, the legal owners of the Funds have used every reasonable, ordinary and legal method to trace these missing Funds and regain possession of them.  To date, there has been no success in securing their return.

7.      Accordingly, Laureatus, as assignee of all ownership right, title, and interest in and to the Funds, and Merchants' claims against the United States and its employees related thereto, beings this claim to recover the Funds and compel the government to comply with the long-established constitutionally and statutorily-mandated procedures that stand as bulwarks against the unilateral and permanent deprivation of its citizens' property and possessions.

8.      At the very least, Laureatus is entitled to, among other things, notice of the statutory authority and allegations of fact pursuant to which the Funds have been seized and/or confiscated, an opportunity to be heard and present arguments and/or evidence in opposition to the seizure and/or confiscation, an independent full and fair adjudication, by an impartial and duly constituted authority, of the lawfulness of the seizure and/or confiscation, and judicial review thereof.

<u>**Standing**</u>

9.      Laureatus is a privately-held Nevada limited liability company that was formed on April 13, 2006, with its principal place of business in Carson City, Nevada.

10.      On or about November 18, 2008, for valuable consideration, Merchants sold, transferred, and assigned to Laureatus, in writing, all of its ownership rights, title, and interest in and to the Funds (the "Assignment"), including this claim against the United States related thereto, and the demand represented by it, and Laureatus ever since has been, and now is, the sole owner and holder of that ownership right, title and interest.  A true and correct copy of the November 18, 2008 Assignment is attached hereto as **Exhibit A** and incorporated herein by reference.

## Factual Summary

**Merchants' Investment Plans**

11.　　On June 27, 2001, Merchants was incorporated at the Indian World Trade Center in Pine Ridge, South Dakota.

12.　　One of Merchants' business purposes was to negotiate for, and assume fiduciary responsibility for, the transfer of more than $2 trillion into the United States for business investment purposes.

13.　　To that end, Merchants engaged Tropos Capital Corporation of America ("Tropos"), a Delaware-based corporation, to manage the investment of $700 billion of the proceeds.

14.　　On or about July 21, 2004, Merchants and its General Manager successfully solicited a two trillion, one-hundred billion U.S. dollars ($2,100,000,000,000.00) investment from a wealthy Taiwanese investor, Mr. Tien Chuan Wu.

15.　　Mr. Wu maintained his funds in a savings account at the Bank of Taiwan, a Taiwanese bank.

16.　　The parties intended to transfer Mr. Wu's investment funds from his savings account at the Bank of Taiwan to Merchants in the United States.

17.　　Wachovia, whose facility was based in the United States, was engaged in order to facilitate the transfer using the ACATS system.

**The ACATS System**

18.　　ACATS is an almost entirely electronic system which executes the transfer of financial securities from a trading account at one institution to the trading account at another.

19.　　ACATS was developed by the National Securities Clearing Corporation ("NSCC"), now a subsidiary of the Depository Trust & Clearing Corporation ("DTCC"), a private holding company owned collectively by banks and financial institutions.

20.　　ACATS handles the settlement of the vast majority of securities transactions in the United States.

21.     ACATS offers several benefits compared to other bank-to-bank transfer services, including its ability to:

- Accommodate various processing capabilities, including automated CPU-to-CPU transfers and secure internet communications;

- Centralize, standardize, automate, and accelerate the transfer of customer accounts between two NSCC Members or between NSCC Members and Depository Trust Corporation ("DTC") bank participants;

- Create cost saving opportunities;

- Permit broker dealer members to comply with the Financial Industry Regulatory Authority ("FINRA") requirements regarding the transfer of customer accounts; and

- Support multiple processing cycles, including accelerated settlement.

22.     For reasons of convenience, the parties to the subject transaction opted to transfer the cash Funds via ACATS (a system typically used to transfer securities).

**The Intercepted Transfer of the Funds**

23.     The parties authorized the Bank of Taiwan to transfer Funds of over $700 billion to Wachovia.  On or about August 25 and 30, 2004, the Bank of Taiwan initiated test transfers of at least $700 billion to Wachovia, through ACATS.

24.     An actual transfer of at least $700 billion was made on or about November 4, 2004.  The Funds did indeed leave the Bank of Taiwan and were no longer reflected on the Bank of Taiwan's books.

25.     The Bank of Taiwan electronically sent the Funds to Wachovia in the United States, via Wachovia's intermediary back office operation entities, which included the DTC, DTCC, Cede & Co., and/or First Clearing, LLC (collectively, the "Clearing Entities").

26.     The Funds sent from the Bank of Taiwan, however, were never credited at Wachovia.

27.     Instead, the Funds were held up by a United States Government-issued chill or freeze order and action, which are generally imposed by the United States Department of the Treasury ("Treasury") or the Federal Reserve on the handler of funds, such as a clearing facility.

28.     As a result, the Funds bound for Wachovia via ACATS were halted, either at DTC, Cede & Co., or First Clearing, LLC, or a combination of all three.

29.     The Funds were then moved to the risk and compliance side of Wachovia's Clearing Entities, where they were placed in chill or suspense.

30.     Because funds that are held or sequestered at the urging of a Government agency are not book-entered onto the operations side of the Clearing Entities, the Funds at issue did not come onto DTC's systems via Cede & Co. and were never book-entered by DTC.

31.     DTC is a registered clearing agency that provides, *inter alia*, oversight for securities transfers, including clearance and settlement services for most transactions that involve equities, corporate or municipal debt, exchange-traded funds and money market instruments.

32.     DTC has broad authority to suspend or terminate the delivery of transaction services to its participant institutions, including the right to suspend action on a particular transaction or transactions, but when it does so, under its own operating rules, it must provide notice of such actions to the affected participant.

33.     The Clearing Entities began the internal process of communicating with the Government regarding the disposition or resolution of the Funds.

34.     At some point, the Funds were then moved from the Clearing Entities to the Treasury and were never book-entered or received by Wachovia or returned to the Bank of Taiwan.

35.     Laureatus has learned that the Bank of Taiwan's records regarding this ACATS transfer were delivered to the Bank of Taiwan's Risk and Compliance Legal Department on November 20, 2004, based upon a "Request for Mutual Assistance Securities Enquiry."  This suggests that a Government agency or securities regulator had made an inquiry to the Bank of

Taiwan about this series of transactions and the Bank of Taiwan had forwarded the records to their legal department for review and response.

36.     None of the lawful parties to the transaction were ever notified as to the reason why the Funds were intercepted.  Nor has any party or participant to the transaction received notice of a chill or freeze.

37.     For some unknown reason, these Funds simply disappeared.

**The Subsequent Campaign of Misdirection**

38.     Following the Funds' disappearance, various Government officials engaged in a years-long campaign of misdirection to prevent Laureatus from determining what happened to the Funds, their precise location, and how their lawful return could be effectuated.

39.     In the aftermath of the Funds' disappearance, then-Treasury Secretary, Henry M. Paulson, and then-Chairman of the Federal Reserve, Ben S. Bernanke, after confirming that Treasury possessed at least a significant portion of the Funds, both promised Laureatus resolution.

40.     Timothy D. Adams, the then-Under Secretary of the Treasury for International Affairs, in fact, negotiated the terms of that resolution, to which Laureatus agreed in writing.

41.     On two separate occasions, however, these officials at the last minute declined to execute the agreement.

42.     On information and belief, Paulson, Bernanke, and Adams declined to execute the agreement because (a) then-President of the New York Federal Reserve, Timothy Geithner, was personally involved in the freezing of the Funds, was therefore at least partially responsible for the Funds disappearance, and faced legal and political liability as a result; and (b) various members of Congress and Executive Branch officials had impermissibly redirected portions of the Funds for purposes other than their return to the Bank of Taiwan or disbursement to Laureatus.

43.     Similarly and subsequently, the then-Director of the Federal Reserve Board's Management Division, Richard "Dick" A. Anderson, again confirmed that the ACATS transfer

from the Bank of Taiwan to Wachovia had occurred, determined the location within the Treasury Department of what remained of the Funds, and reported these facts to the Board of Directors of Laureatus.

44.     Various Treasury officials, including Bernanke; his assistant, Rita C. Paulson; Confidential Assistant to the Treasury Secretary, Cheryl L. Matera; Counsel to the Inspector General, Richard Delmar; and Assistant General Counsel for International Affairs, Russell L. Munk purported to work with Anderson toward finalizing the earlier negotiated resolution but, in actuality and on information and belief, had no intention of doing so because of the exposure faced by Geithner (who had since become Treasury Secretary) for his involvement in the freeze and disappearance of the Funds.

45.     On information and belief, even as recently as July 2016, Delmar himself verified with the Federal Reserve Board's Office of Inspector General that Treasury still possessed what remained of the Funds but, at the instruction of the Board, denied to an agent acting on behalf of Laureatus that the Funds had ever been transferred to the Treasury—the first time that any government official had ever denied Treasury's possession of the Funds.

46.     To date, what remains of the Funds are still believed to be currently in the possession, custody, and control of the Treasury.

### The United States Is Liable for Conversion

47.     Laureatus, as assignee, is the rightful owner of the Funds and has a right to immediate possession of said Funds, which right is absolute, unconditional, and not dependent upon the performance of any act.

48.     The Treasury, and its employees, have a nondiscretionary, mandatory duty to adhere to due process of law and to respect the legal rights of affected parties when taking private property.

49.     By diverting the Funds and exercising control and dominion over them, to the exclusion of Laureatus, the Treasury, and its employees, have stolen, seized and/or confiscated property belonging to Laureatus, without observance of procedure required by law.

50.     The Treasury, and its employees, have intentionally interfered with Laureatus's possession of the Funds by stealing, seizing and/or confiscating the Funds and converting those Funds to their own use. Such wrongful acts are inconsistent with the property rights of Laureatus.

51.     The foregoing conduct was undertaken by presently unknown federal employees of the Treasury, acting within the scope of his or her employment as an agent of the Treasury.

52.     As a direct and proximate result of the conduct of the presently unknown federal employees of the Treasury, Merchants, and Laureatus as assignee, suffered damages, including the value of the Funds converted and amounts expended in pursuit of the Funds.

53.     Despite demand by Laureatus for immediate return of the Funds, the Treasury, and its employees, have failed and refused, and continue to fail and refuse, to return the Funds to Laureatus, which constitutes the tort of conversion under both state and common law.

**SEIZED ASSET CLAIM**

The foregoing claim shall also serve as a Seized Asset Claim by Laureatus pursuant to the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), 18 U.S.C. § 983.

I attest and declare under penalty of perjury that Laureatus's claim to this property is not frivolous and that the information provided in support of Laureatus's claim is true and correct to the best of my knowledge and belief.

Name: Andre Hollis                    Date:

## ATTACHMENT 11

| NAME | ADDRESS |
|---|---|
| Tien Chuan Wu | Deceased |
| Clarence William Kissinger | 2104 Turtle Run Rd. Apt. 8<br>Henrico, VA 23233-3674 |
| Henry M. Paulson Jr. | The Paulson Institute<br>625 N. Michigan Ave, Ste 2500<br>Chicago, ILL 60611 |
| Ben S. Bernanke | Ben S. Bernanke<br>The Brookings Institution<br>Distinguished Fellow in Residence<br>1775 Massachusetts Ave., NW<br>Washington, DC 20036-2103 |
| Timothy D. Adams | President and CEO<br>Institute of International Finance<br>1333 H Street N W, Suite 800 E<br>Washington, D. C. 20005-4770 |
| Timothy Geithner | President<br>Warburg Pincus LLC<br>450 Lexington Ave<br>New York, NY 10017 |
| Richard "Dick" A. Anderson | Fulton County Manager<br>141 Pryor St SW<br>Atlanta. GA 30303 |
| Rita C. Proctor | Rita C Proctor (Retired 2014)<br>2322 Bright Seat Rd.<br>Hyattsville, MD 20785-3558 |
| Cheryl L. Matera | Last known address:<br>10 Beatty Ave.<br>Clinton, NJ 13323-1502 |
| Richard K. Delmar | Acting Inspector General<br>U.S. Department of the Treasury<br>1500 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20220 |
| Russell L. Munk | 3211 Wake Drive<br>Kensington, MD 20895 |
| David Robert Malpass | President<br>World Bank Group<br>1818 H Street NW,<br>Washington, DC 20895 |

# EXHIBIT B



**DEPARTMENT OF THE TREASURY**
**WASHINGTON, D.C. 20220**

February 18, 2022

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Michael Azat
The Azat Law Group
1785 Locust St., Unit 3
Pasadena, CA 91106

Re:     Administrative Claim Dated July 24, 2021

Dear Mr. Hollis:

This notice constitutes final administrative action on your claim, dated July 24, 2021, on behalf of your client, Laureatus Group, LLC (Laureatus), against the United States in the amount of $700,000,000,000.00, for alleged conversion of funds. Your claim is denied.

Your claim asserts that in November 2004, Merchants International Holding Ltd. (Merchants) arranged a transfer of $700,000,000,000.00 in cash from the Bank of Taiwan to an American company, with the transfer to be facilitated by Wachovia Securities. You claim that the funds were never received at Wachovia, but rather were "moved to the risk and compliance side of Wachovia's Clearing Entities." You further allege that "at some point, the Funds were then moved from the Clearing Entities to the Treasury" and that "[f]or some unknown reason, these Funds simply disappeared." Your claim alleges no specific conduct by any identified Treasury employee or entity. Nor does it include any contemporaneous correspondence demanding or providing any explanation for the alleged disappearance.

Your claim must be denied for several reasons. First, Laureatus Group, LLC, has no valid legal right to assert a claim against the United States based on the loss allegedly suffered by Merchants. Your claim asserts that the claim was assigned from Merchants to Laureatus on November 18, 2008. However, an assignment of a claim against the United States "may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." 31 U.S.C. § 3727(b). The claim at issue had not been allowed when the purported assignment was made (nor has it since). An assignment in violation of the statute is null and void as to the United States. *See, e.g. Northrop Grumman Computing Sys. v. United States*, 709 F.3d 1107 (Fed. Cir. 2013). Therefore, Laureatus has not, and cannot, establish a right to pursue a claim against the United States with respect to the alleged loss.

Second, the claim you seek to assert is time barred. A tort claim against the United States is forever barred unless it is presented in writing to the appropriate Federal Agency within two years after the claim accrues. 28 U.S.C. § 2401(b). The alleged loss here occurred in 2004.

Further, you have not established that any relevant event occurred within the limitations period. Therefore, your claim was not timely asserted and is no longer cognizable.

Third, your claim is barred by statute. Specifically, the FTCA does not apply to "[a]ny claim for damages caused by the fiscal operations of the Treasury or by the regulation of the monetary system." 28 U.S.C. § 2680(i).

Finally, even if your claim were otherwise cognizable, you have not alleged sufficient facts to establish a tort by the United States Department of the Treasury, or even to permit a reasonable investigation of your claim. While you claim that $700,000,000,000.00 was at an unspecified time moved from an unspecified "Clearing Entity" to the Treasury, you do not allege any specific tortious conduct by any identifiable Treasury employee or entity.

Moreover, without any information as to when the alleged movement of funds occurred, what entity initiated the movement, or what entity within the Department of the Treasury might have received the funds, it would be impossible to conduct a meaningful investigation of your claim. Further, it is simply incredible that a legitimate owner of a sum of $700,000,000,000.00 that disappeared in the course of a wire transfer would not have demanded and received a written explanation from the banks entrusted with the transfer. Your failure to provide such information supports an inference that the loss did not occur, or, alternatively, that the explanation was a cause other than conversion by the Department of the Treasury.

For the reasons set forth above, your claim is hereby denied.

If you are dissatisfied with the agency denial of your claim, you may file suit in an appropriate United States District Court no later than six months from the date of mailing of this letter. In the alternative, and prior to the expiration of the six-month period, you may file a written request for reconsideration. Any such request should be directed to my attention at the address above.

Sincerely,

Mike Thomas
Deputy Assistant Secretary for
Treasury Operations