**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LAUREATUS GROUP, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:22-cv-02103 |
| UNITED STATES DEPARTMENT OF THE | ) | |
| TREASURY, JANET YELLEN, in her official | ) | |
| capacity as the Secretary of the United States | ) | |
| Department of the Treasury; MERRICK | ) | |
| GARLAND, in his official capacity as the Attorney | ) | |
| General of the United States; DEPOSITORY | ) | |
| TRUST COMPANY, a New York limited purpose | ) | |
| trust company; DEPOSITORY TRUST & | ) | |
| CLEARING CORPORATION, a New York | ) | |
| Corporation; JOHN DOE Nos. 1 to 25, and the | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF GOVERNMENT DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER
JURISDICTION AND FAILURE TO STATE A CLAIM**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

DIANE KELLEHER
Assistant Director, Federal Programs Branch

ELIZABETH TULIS
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: 202-514-9237
E-mail: elizabeth.tulis@usdoj.gov

KRISTIN B. MCGRORY
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 888 Ben Franklin Station
Washington, DC 20044
Phone: 202-616-4206
Email: Kristin.B.McGrory@usdoj.gov

*Attorneys for the Government Defendants*

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................1

FACTUAL BACKGROUND ...................................................................................3

PROCEDURAL BACKGROUND...........................................................................4

ARGUMENT .........................................................................................................6

I.      Legal Standards.........................................................................................6

II.     The Complaint Should Be Dismissed Under Rule 12(b)(1) for Lack of Standing. ...........7

III.    The Court Lacks Jurisdiction Over Plaintiffs' Constitutional and APA Claims Because Plaintiff Seeks Monetary Relief. ...........10

IV.     This Court Is an Improper Venue for Plaintiff's FTCA Claim.....................................13

V.      Plaintiffs' Constitutional, APA, and FTCA Claims Are Time-Barred..........................14

        A.      Plaintiff's Constitutional and APA Claims Are Time-Barred. ...........14

        B.      Plaintiff's FTCA Claim Is Time-Barred...........................................16

VI.     Plaintiff Fails To Plausibly Allege Unlawful Conduct under the U.S. Constitution, APA, or FTCA. ...................................18

        A.      Plaintiff Fails to Plausibly Allege Any Fifth Amendment Violation. .................20

                1.      Plaintiff Fails To Plausibly Allege aProcedural Due Process Violation. ...................20

                2.      Plaintiff Fails To Plausibly Allege a Substantive Due Process Violation. ...................22

                3.      Plaintiff Fails To Plausibly Allege a Violation of the Takings Clause...................23

                4.      Plaintiff Fails To Plausibly Allege an Equal Protection Violation. .........24

        B.      Plaintiff Fails To Plausibly Allege a Fourth Amendment Violation..................25

        C.      Plaintiff Fails To Plausibly Allege an "Arbitrary and Capricious" Claim Under the APA. ...................25

D.      Plaintiff Fails to Plausibly Allege an APA Claim Based on "Unlawfully Withheld
        or Unreasonably Delayed" Agency Action.........................................................26

E.      Plaintiff's FTCA Claim Fails under Rule 12(b)(1) or Rule 12(b)(6) Because
        Plaintiff Fails to State a Claim for Conversion..................................................28

        1.      Plaintiff Fails To Plausibly Allege a Proprietary Interest......................29

        2.      The Complaint Does Not Allege that The Government Exercised
                Unlawful Control Over the Funds........................................................31

VII.    Plaintiff's Claim for a "Writ of Mandamus"
        Should Be Dismissed Under Rule 12(b)(1).................................................................32

VIII.   Plaintiff Has Not Stated a Cognizable Claim for "Declaratory Judgment."...................33

CONCLUSION...........................................................................................................................34

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*13th Reg'l Corp. v. U.S. Dep't of Interior*,
    654 F.2d 758 (D.C. Cir. 1980)...................................................................................33

*Air Pegasus of D.C., Inc. v. United States*,
    424 F.3d 1206 (Fed. Cir. 2005) ...............................................................................24

*Ali v. Rumsfeld*,
    649 F.3d 762 (D.C. Cir. 2011)..................................................................................34

*Am. Airlines, Inc. v. Austin*,
    778 F. Supp. 72 (D.D.C. 1991)...........................................................................11, 12

*Am. Hosp. Ass'n v. Burwell*,
    812 F.3d 183 (D.C. Cir. 2016)..................................................................................33

*Am. Nat'l Ins. Co. v. FDIC*,
    642 F.3d 1137 (D.C. Cir. 2011).................................................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................*passim*

*Bartel v. FAA*,
    617 F. Supp. 190 (D.D.C. 1985)..............................................................................13

*Bazuaye v. United States*,
    41 F. Supp. 2d 19 (D.D.C. 1999)........................................................................29, 31

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................7

*Brown v. United States*,
    631 F. Supp. 954 (D.D.C. 1986), *aff'd*, 810 F.2d 307 (D.C. Cir. 1987)................................13

*Brownback v. King*,
    141 S. Ct. 740 (2021)........................................................................................28, 32

*Clark v. Libr. of Cong.*,
    750 F.2d 89 (D.C. Cir. 1984)...................................................................................12

*Cnty. of Sacramento v. Lewis*,
    523 U.S. 833 (1998)................................................................................................23

*Collins v. City of Harker Heights, Tex.*,
   503 U.S. 115 (1992) ........................................................................................... 23

*Conti v. United States*,
   291 F.3d 1334 (Fed. Cir. 2002) ................................................................... 21, 24

*Cronauer v. United States*,
   394 F. Supp. 2d 93 (D.D.C. 2005) .................................................................... 17

*Crowley Gov't Servs., Inc.* v. *Gen. Servs. Admin.*,
   38 F.4th 1099 (D.C. Cir. 2022) ......................................................................... 10

*Curaflex Health Services, Inc. v. Bruni*,
   877 F. Supp. 30 (D.D.C. 1995) .................................................................... 29, 30

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ............................................................................................ 7

*D.C. Ret. Bd. v. United States*, No. CIV. A 85-3693,
   1987 WL 9510 (D.D.C. Apr. 6, 1987) ............................................................... 11

*Diamond v. Fed. Emergency Mgmt. Agency*,
   689 F. Supp. 163 (E.D.N.Y. 1988) ................................................................. 9, 10

*Dobbs v. Jackson Women's Health Org.*, No. 19-1392,
   597 U.S. ___ (June 24, 2022) ........................................................................... 23

*Duggan v. Keto*,
   554 A.2d 1126 (D.C. 1989) .......................................................................... 29, 31

*Dyson v. District of Columbia*,
   710 F.3d 415 (D.C. Cir. 2013) .......................................................................... 16

*EEOC v. St. Francis Xavier Parochial Sch.*,
   117 F.3d 621 (D.C. Cir. 1997) ............................................................................ 7

*Estate of Phillips v. Dist. of Columbia*,
   455 F.3d 397 (D.C. Cir. 2006) .......................................................................... 22

*FDIC v. Meyer*,
   510 U.S. 471 (1994) ............................................................................. 10, 11, 28

*Fed. Fire Prot. Corp. v. J.A. Jones/Tompkins Builders, Inc.*,
   267 F. Supp. 2d 87 ............................................................................................ 29

v

*Fund for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) .................................................................................. 8

*Gulf Coast Mar. Supply, Inc. v. United States*,
    867 F.3d 123 (D.C. Cir. 2017) .................................................................................. 7

*Hagans v. Lavine*,
    415 U.S. 528 (1974) .............................................................................................. 20

*Head v. Wilson*,
    792 F.3d 102 (D.C. Cir. 2015) ......................................................................... 15, 16

*Hearts Bluff Game Ranch, Inc. v. United States*,
    669 F.3d 1326 (Fed. Cir. 2012) ............................................................... 21, 23, 24

*Impro Prods., Inc. v. Block*,
    722 F.2d 845 (D.C. Cir. 1983) ................................................................................ 14

*In re Cheney*,
    406 F.3d 723 (D.C. Cir. 2005) .............................................................................. 33

*Jackson v. Modly*,
    949 F.3d 763 (D.C. Cir.) .................................................................................. 15, 16

*Jafarzadeh v. Nielsen*,
    321 F. Supp. 3d 19 (D.D.C. 2018) ........................................................................ 14

*John R. Sand & Gravel Co. v. United States*,
    552 U.S. 130 (2008) .............................................................................................. 12

*Kaempe v. Myers*,
    367 F.3d 958 (D.C. Cir. 2004) .............................................................................. 31

*Kidwell v. Dep't of Army*,
    56 F.3d 279 (D.C. Cir. 1995) ........................................................................... 11, 12

*Klayman v. Rao*,
    No. 21-CV-02473 (CRC), 2021 WL 4948025 (D.D.C. Oct. 25, 2021) .................. 20

*Kugel v. United States*,
    947 F.2d 1504 (D.C. Cir. 1991) ............................................................................ 32

*Langbord v. United States Dep't of Treasury*,
    832 F.3d 170 (3d Cir. 2016) .................................................................................. 27

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................... 8

*Mackinac Tribe v. Jewell*,
    87 F. Supp. 3d 127 (D.D.C. 2015) .................................................... 6

*McKoy v. Spencer*,
    271 F. Supp. 3d 25 (D.D.C. 2017) .................................................. 10

*McNamara v. Picken*,
    950 F.Supp.2d 193 (D.D.C. 2013) .............................................. 29, 30

*Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*,
    763 F.2d 1441 (D.C. Cir. 1985) ...................................................... 10

*Molina-Aviles v. Dist. of Columbia*,
    824 F. Supp. 2d 4 (D.D.C. 2011) ................................................ 22, 23

*Montes v. Janitorial Partners, Inc.*,
    859 F.3d 1079 (D.C. Cir. 2017) ...................................................... 17

*Norman v. United States*,
    467 F.3d 773 (D.C. Cir. 2006) ........................................................ 18

*Northrop Grumman Computing Sys., Inc. v. United States*,
    709 F.3d 1107 (Fed. Cir. 2013) ........................................................ 9

*Norton v. S. Utah Wilderness All.*,
    542 U.S. 55 (2004) ......................................................................... 26

*O'Callaghan v. Dist. of Columbia*,
    741 F. Supp. 273 (D.D.C.1990) ...................................................... 29

*Pace v. DiGuglielmo*,
    544 U.S. 408 (2005) ....................................................................... 15

*Patel v. Phillips*,
    933 F. Supp. 2d 153 (D.D.C. 2013) ................................................ 13

*Power v. Barnhart*,
    292 F.3d 781 (D.C. Cir. 2002) ........................................................ 32

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.*,
    758 F.3d 296 (D.C. Cir. 2014) ...................................................... 8, 9

*Rann v. Chao*,
    346 F.3d 192 (D.C. Cir. 2003) .......................................................................................... 18

*Regan v. Spicer HB, LLC*,
    134 F. Supp. 3d 21 (D.D.C. 2015) ..................................................................................... 9

*Richards v. Duke Univ.*,
    480 F. Supp. 2d 222 (D.D.C. 2007) ................................................................................. 20

*Robinson v. Washington Metro. Area Transit Auth.*,
    167 F. Supp. 3d 118 (D.D.C. 2016) ........................................................................... 20, 21

*Sexton v. United States*,
    832 F.2d 629 (D.C. Cir. 1987) .......................................................................................... 16

*Smith v. United States*,
    518 F. Supp. 2d 139 (D.D.C. 2007) ................................................................................... 6

*Smothers v. Dist. of Columbia*,
    No. 19-cv-2632 (ABJ), 2020 WL 5411294 (D.D.C. Sept. 9, 2020) ................................... 24

*Soldal v. Cook Cnty., Ill.*,
    506 U.S. 56 (1992) ............................................................................................................ 25

*Sprint Commc'ns Co. v. FCC*,
    76 F.3d 1221 (D.C. Cir. 1996) .......................................................................................... 14

*Thomas v. Nicholson*,
    539 F. Supp. 2d 205 (D.D.C. 2008) ................................................................................. 16

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018) ........................................................................................................ 8

*United States v. Jacobsen*,
    466 U.S. 109 (1984) .......................................................................................................... 25

*United States v. Wong*,
    575 U.S. 402 (2015) .......................................................................................................... 17

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*,
    454 U.S. 464 (1982) ............................................................................................................ 7

*Van Dorn Retail Mgmt., Inc. v. Sovran Bank/DC Nat'l, Inc.*,
    No. 90-2974, 1991 WL 222061 (D.D.C. Oct. 9, 1991) ..................................................... 29

*Void-El v. O'Brien*,
   811 F. Supp. 2d 255 (D.D.C. 2011) ................................................................. 13

*Warth v. Seldin*,
   422 U.S. 490 (1975).......................................................................................... 8

*Washington v. Glucksberg*,
   521 U.S. 702 (1997).................................................................................... 22, 23

*Waters v. Rumsfeld*,
   320 F.3d 265 (D.C. Cir. 2003)......................................................................... 11

*Whiteside v. United States*,
   775 F.3d 180 (4th Cir. 2014)........................................................................... 15

*Wilderness Soc'y v. Norton*,
   434 F.3d 584 (D.C. Cir. 2006).......................................................................... 8

*Wyatt v. United States*,
   271 F.3d 1090 (Fed. Cir. 2001) ....................................................................... 24

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. IV.......................................................................................... 25

U.S. CONST. amend. V...................................................................................... 20, 23

## STATUTES

5 U.S.C. § 702...........................................................................................10, 25, 26

5 U.S.C. § 704...................................................................................................... 26

5 U.S.C. § 706................................................................................................. 26, 27

18 U.S.C. § 983.................................................................................................. 4, 27

28 U.S.C. § 1346 *et seq.*........................................................................................ 4

28 U.S.C. § 1346............................................................................................. 11, 28

28 U.S.C. § 1361.................................................................................................. 32

28 U.S.C. § 1402.................................................................................................. 13

28 U.S.C. § 1406.................................................................................................. 14

28 U.S.C. § 1491 ................................................................................................ 11

28 U.S.C. § 2201 ................................................................................................ 33

28 U.S.C. § 2401 ...................................................................................14, 16, 17

28 U.S.C. § 2501 ........................................................................................ 12, 14

28 U.S.C. § 2680 ................................................................................................ 32

31 U.S.C. § 3727 .................................................................................................. 9

OTHER AUTHORITES

Fiduciary, Black's Law Dictionary (11th ed. 2019)........................................... 21, 30

# INTRODUCTION

The claims in this case rest on the following allegation: In November 2004, for unspecified reasons, an unspecified division of the U.S. Department of the Treasury—or some other unspecified government entity—seized $700 billion that was being transferred for unspecified "infrastructure development" purposes from Taiwanese investor Tien Chuan Wu to American company Merchants International Holding Ltd. ("Merchants"), neither of whom is a party to this action. Though heavy with provocative accusations and insinuations, the complaint offers few well-pleaded facts regarding the basis for Plaintiff's claims, the United States Government's alleged role in those actions, or even Plaintiff's purported interest in the matter. Nonetheless, Plaintiff maintains that the funds disappeared as a result of "lawless" actions by the Government, and sues, among others, the United States Department of the Treasury, the United States Secretary of the Treasury, the Attorney General of the United States, and the United States of America ("the Government Defendants").

The Court should dismiss the claims against the Government Defendants for lack of subject matter jurisdiction and failure to state a claim on which relief can be granted.

First, Plaintiff does not plausibly allege that it has Article III standing. Plaintiff asserts in a conclusory manner that it has standing as the "corporate successor" to Merchants, but Plaintiff alleges no facts supporting the conclusion that any claims held by Merchants in fact transferred to Plaintiff by "operation of law," or that Plaintiff otherwise suffered any personal injury in connection with the alleged disappearance of funds. Indeed, Plaintiff's administrative claim contradicts its new assertion that any claims held by Merchants transferred to Plaintiff by "operation of law."

Second, the Court lacks subject matter jurisdiction over Plaintiff's constitutional and Administrative Procedure Act ("APA") claims because those claims seek monetary relief, and Congress has not waived sovereign immunity with respect to such claims.

Third, the allegations of the complaint indicate that this Court is an improper venue for Plaintiff's Federal Tort Claims Act ("FTCA claim"), and the claim may be dismissed on that basis alone.

Fourth, Plaintiff's constitutional, APA, and FTCA claims are time-barred, as Plaintiff commenced this action 18 years after the relevant alleged injury is alleged to have occurred, well outside the applicable 6-year and 2-year statutes of limitations, and there is no basis to excuse that untimeliness.

Fifth, Plaintiff does not plausibly allege any unlawful conduct by the Government Defendants. Plaintiff's complaint rests on a speculative and bizarre conspiracy theory, consisting of vague and conclusory allegations of government wrongdoing. As such, it fails to state a facially plausible claim under the U.S. Constitution, APA, or FTCA.

Finally, Plaintiff fails to allege a plausible basis for mandamus jurisdiction, and Plaintiff's "declaratory judgment" claim fails because a declaratory judgment is a remedy, and not an independent cause of action.

Accordingly, the claims against the Government Defendants should be dismissed under Rules 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND[1]

On June 27, 2001, Merchants was incorporated in Pine Ridge, South Dakota. Complaint (Compl.) ¶ 23, ECF No. 1. The company's primary business purpose was to solicit investments from entities outside the United States and to assume fiduciary responsibility over any transferred funds. *Id.* ¶¶ 23-25. Approximately five years later, on April 13, 2006, Plaintiff, Laureatus Group, LLC, a privately held limited liability company, was formed in April 2006 in Nevada. *Id.* ¶ 9.

In July 2004, Merchants solicited a two trillion, one-hundred billion dollar ($2,100,000,000,000.00) investment from a Taiwanese investor, Mr. Tien Chuan Wu, for infrastructure development within the United States. *Id.* ¶ 3, 26. Mr. Wu maintained his funds in an account with the Bank of Taiwan and he agreed to make an initial transfer of $700 billion ($700,000,000,000.00) to Merchants, in the United States, for infrastructure development. *Id.* ¶¶ 3, 27. Although the parties agreed that Merchants would assume fiduciary responsibility for the funds, Merchants engaged a separate company, Tropos Capital Corporation (Tropos), to manage the $700 billion dollar investment ("the Funds"). *Id.* ¶¶ 24-25.

The parties agreed the transfer would be facilitated by Wachovia Securities (now Wells Fargo), whose facility is in the United States, and effectuated through Wachovia's Automated Customer Account Transfer Service ("ACATS"). *Id.* ¶¶ 2, 27, 29. The ACATS system is an electronic system that transfers financial securities from one financial institution to another. *Id.* ¶ 30. To ensure the successful transfer of funds to Wachovia, the Bank of Taiwan initiated several test transfers in late August 2004 using ACATS. *Id.* ¶ 35.

---

[1] For purposes of this section, the Government Defendants rely on the well-pleaded facts alleged in the Complaint, which are assumed to be true solely for purposes of the motion to dismiss. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

Over a month later, on November 4, 2004, the Bank of Taiwan initiated the actual electronic transfer of Mr. Wu's $700 billion investment to Wachovia using the ACATS system. *Id.* at ¶ 36. Records from the Bank of Taiwan reflect that the funds left the Bank. *Id.* The Bank of Taiwan electronically sent the funds to Wachovia with the assistance of Wachovia's intermediary operation entities, including Defendant Depository Trust & Clearing Corporation ("DTCC") and Defendant Depository Trust Company ("DTC"). *Id.* ¶¶ 14-15, 37.[2] However, the funds were never credited to a Wachovia account in the United States. *Id.* ¶¶ 36, 38. Rather, "[f]or some unknown reason, the funds just disappeared." *Id.* ¶ 49.

## PROCEDURAL BACKGROUND

On July 24, 2021, seventeen years after the alleged disappearance occurred, Plaintiff filed a Standard Form 95 ("SF-95") administrative claim with the Department of the Treasury pursuant to the FTCA, 28 U.S.C. § 1346, *et. seq.*, arguing the United States was liable for the tort of conversion. *Id.* ¶ 22; *see also id.*, Exhibit (Ex.) A. At the end of the narrative document attached to its SF-95, Plaintiff stated that "[t]he foregoing claim shall also serve as a Seized Asset Claim . . . pursuant to the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), 18 U.S.C. § 983." *See id.*, Ex. A, at 8. On February 18, 2022, the Department of the Treasury denied Plaintiff's FTCA claim. *Id.*, Ex. B.

On July 18, 2022, Plaintiff filed suit in this Court alleging several causes of action stemming from the alleged disappearance of funds in 2004, including federal constitutional claims, APA claims, an FTCA claim, and claims for a "writ of mandamus" and "declaratory

---

[2] DTC and/or DTCC is a registered clearing agency that provides oversight for securities transfers, including clearance and settlement services for most transactions that involve equities, corporate or municipal debt, exchange-traded funds and money market instruments. Compl. ¶ 43. DTC has broad authority to suspend or terminate the delivery transaction services to its participant institutions. *Id.* ¶ 44.

4

judgment." *Id.* ¶¶ 55-127. Plaintiff asserts that it has standing to bring this action because it is the "corporate successor to Merchants as a result of changes to Merchants' corporate form that resulted in the transfer of the claims to Plaintiff by operation of law." *Id.* ¶ 17. Plaintiff names unknown individual defendants, private corporate-entity defendants, the Attorney General and Secretary of the Treasury in their official capacities, the Department of the Treasury, and the United States. *See id.* ¶¶ 10-16. The complaint states that Plaintiff's *Bivens* claim is brought against the unknown defendants, and that the FTCA claim is directed against the United States, but otherwise, the complaint does not indicate which claims apply to which of the multiple named defendants in this case. *See generally id.* ¶¶ 55-127.

In its complaint, Plaintiff asserts, *inter alia*, that the Government "lawlessly intercepted, stole, confiscated, seized, and/or illegally exacted" the $700 billion at issue. Compl. ¶ 5. Plaintiff alleges no further facts regarding this alleged wrongdoing or the alleged roles of individual Government Defendants with respect to that wrongdoing. Later, Plaintiff speculates that the funds "were held up by a United States Government-issued chill or freeze order and action." *Id.* ¶ 39 (internal references omitted). Yet Plaintiff also alleges that no "party or participant to the transaction received notice of a chill or freeze." *Id.* ¶ 48.

Plaintiff contends that unspecified Government officials "engaged in a years-long campaign of misdirection and concealment to prevent Plaintiff from determining what happened to the Funds," *id.* ¶ 50, but does not identify what acts or omissions allegedly constituted this "misdirection and concealment." *Id.* Plaintiff also asserts that various high-level government officials "confirm[ed] that Treasury possessed at least a significant portion of the Funds" and "promised Plaintiff resolution." *Id.* ¶ 51; *see also id.* ¶ 52. But Plaintiff does not identify the dates of these alleged exchanges, the mode of communication, or any other facts regarding the

5

content of the alleged statements. Plaintiff asserts that the alleged attempted resolution never came to fruition because

> (a) then-President of the New York Federal Reserve, Timothy Geithner, was personally involved in the freezing of the Funds, was therefore at least partially responsible for the Funds disappearance, and faced legal and political liability as a result; and (b) various members of Congress and Executive Branch officials had impermissibly redirected portions of the Funds for purposes other than their return to the Bank of Taiwan or disbursement to Plaintiff.

*Id.* ¶ 51. Plaintiff alleges no facts regarding Mr. Geithner's purported "personal[ ] involve[ment]" or the "various members of Congress and Executive Branch officials" who allegedly "impermissibly redirected portions of the Funds." *Id.*

As relief, Plaintiff asks the Court to make several findings and declarations regarding the defendants' alleged unlawful conduct and Plaintiff's alleged right to the funds at issue; seeks an order directing "Defendants to immediately pay out those Funds"; and seeks damages, a "Writ of Mandamus compelling Defendants to adjudicate Plaintiff's right to return of the Funds," and costs, disbursements, and pre- and post-judgment interest. *Id.* at 21-22.

## ARGUMENT

### I.   Legal Standards

A motion to dismiss under Rule 12(b)(1) is a threshold challenge to the Court's subject matter jurisdiction. *Smith v. United States*, 518 F. Supp. 2d 139, 145 (D.D.C. 2007). The plaintiff bears the burden to establish the court's jurisdiction over the complaint. *Mackinac Tribe v. Jewell*, 87 F. Supp. 3d 127, 136 (D.D.C. 2015). Rule 12(b)(1) motions fall into two categories: facial challenges and factual challenges. *Smith*, 518 F. Supp. 2d at 145. The standard applicable to a Rule 12(b)(1) motion that raises a facial challenge is similar to the Rule 12(b)(6) standard, in that the court must accept as true the plaintiff's well-pleaded allegations, but also must

"disregard any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations within the complaint." *Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017) (per curiam).

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint satisfies the plausibility standard when the "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* Although "Rule 8 [of the Federal Rules of Civil Procedure] marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. In evaluating the sufficiency of the complaint, the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## II.      The Complaint Should Be Dismissed Under Rule 12(b)(1) for Lack of Standing.

"[T]he judicial power of the United States" is limited by Article III of the Constitution "to the resolution of 'cases' and 'controversies.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471 (1982); *see DaimlerChrysler Corp. v. Cuno*,

547 U.S. 332, 341 (2006). "One of the essential elements of a legal case or controversy is that the plaintiff have standing to sue." *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018). Article III standing requires "(1) injury in fact, (2) causation, and (3) redressability." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732-33 (D.C. Cir. 2003) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). For "injury in fact," a plaintiff must have suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560. Moreover, "the injury in fact test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Wilderness Soc'y v. Norton*, 434 F.3d 584, 590 (D.C. Cir. 2006). Thus, a plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Plaintiff has not plausibly alleged that it has Article III standing to bring its claims because it has alleged no injury in fact. Plaintiff's claims rest on an allegation that, in November 2004, the federal government confiscated or seized $700 billion that was being transferred by a Taiwanese citizen to another company—Merchants. Compl. ¶¶ 3-5, 26-28, 36-39. Plaintiff does not allege that it had any financial interest in these funds. Indeed, according to the complaint, Plaintiff did not even exist in November 2004, but rather was incorporated years later, in 2006. Compl. ¶¶ 3, 9.

Rather, Plaintiff's sole allegation regarding its standing in this action is that it is "the corporate successor to Merchants as the result of changes to Merchants' corporate form that resulted in the transfer of the claims to Plaintiff by operation of law." *Id.* ¶ 17. However, this statement is merely a legal conclusion, and thus not entitled to the assumption of truth. *See, e.g.*, *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014) (explaining

that the court does "not accept as true . . . the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged"). Plaintiff alleges no facts supporting the conclusion that any relevant claims held by Merchants did indeed transfer to Plaintiff by "operation of law."  And Plaintiff offers no other theory of Article III injury.

Moreover, Plaintiff's administrative claim, which is attached to the complaint, contradicts Plaintiff's assertion that Merchants' claims transferred to Laureatus "by operation of law." Compl. ¶ 17; *see id.*, Ex. A. *Cf. Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 26 (D.D.C. 2015) ("Moreover, when a written instrument is attached to a complaint and it contradicts the allegations in the complaint, the written instrument controls"). In its administrative claim, Plaintiff did not allege that it was Merchants' "corporate successor."  Instead, Plaintiff stated that in November 2008, Merchants "sold, transferred, and assigned . . . its ownership rights, title, and interest in the Funds" to Laureatus, including its "claim against the United States related thereto." Compl., Ex. A, ¶ 10. However, an assignment of a claim against the United States "may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." 31 U.S.C. § 3727(b).[3] An assignment that does not comply with the requirements set forth in 31 U.S.C. § 3727 is "null and void as against the United States." *Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1113

---

[3] Indeed, this limitation was noted in and one of the bases for the Department of the Treasury's denial of Plaintiff's FTCA administrative claim, which also is attached to the Complaint. *See* Compl., Ex. B. Although the complaint in this case is largely identical to Plaintiff's administrative claim, Plaintiff appears to have added the conclusory assertion that Laureatus is Merchants' corporate successor, and deleted its prior allegation that Merchants instead merely assigned its interest in the Funds to Laureatus, to evade the statutory assignment bar cited in the agency's denial of its administrative claim. *See, e.g., Diamond v. Fed. Emergency Mgmt. Agency*, 689 F. Supp. 163, 167 (E.D.N.Y. 1988) (noting that, in contrast to assignments, "involuntary transfers, such as subrogations effected as a matter of law, do not fall within the purview of the [Anti-Assignment] Act").

(Fed. Cir. 2013). Here, Merchants' purported assignment of the relevant claims occurred before any such claim was allowed or decided, and before any warrant for payment issued. *See* Compl., Ex. A, ¶ 10. Accordingly, Plaintiff has not alleged facts demonstrating Article III standing. *See, e.g.*, *Diamond v. Fed. Emergency Mgmt. Agency*, 689 F. Supp. 163, 168 (E.D.N.Y. 1988) (dismissing complaint for lack of standing based on conclusion that "§ 3727 is applicable and has not been complied with").

## III.   The Court Lacks Jurisdiction Over Plaintiffs' Constitutional and APA Claims Because Plaintiff Seeks Monetary Relief.

The Court also lacks jurisdiction over Plaintiff's putative constitutional and APA claims because Plaintiff seeks monetary relief, and no waiver of sovereign immunity allows Plaintiff to pursue such claims in this Court.

"Sovereign immunity is jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Absent a waiver by Congress, sovereign immunity shields the United States from suit, and, where there is a waiver, "the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* (internal alteration and quotation marks omitted). This protection extends to federal agencies and federal officers in their official capacities. *See id.* In the APA, Congress waived sovereign immunity only for claims seeking "relief other than money damages" for persons "adversely affected or aggrieved by agency action." 5 U.S.C. § 702; *see Crowley Gov't Servs., Inc.* v. *Gen. Servs. Admin.*, 38 F.4th 1099, 1105-06 (D.C. Cir. 2022). Claims that seek "compensatory monetary relief that is 'given to the plaintiff to substitute for a suffered loss'" thus fall outside the APA's limited waiver of sovereign immunity. *McKoy v. Spencer*, 271 F. Supp. 3d 25, 33 (D.D.C. 2017) (quoting *Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*, 763 F.2d 1441, 1446 (D.C. Cir. 1985)) (emphasis omitted). Moreover, Congress has not waived sovereign immunity for constitutional tort claims.

10

*See Meyer*, 510 U.S. at 471-78. And the Tucker Act provides that jurisdiction over any non-tort constitutional claim seeking more than $10,000 lies exclusively in the U.S. Court of Federal Claims ("Claims Court*"). See Waters v. Rumsfeld*, 320 F.3d 265, 270 (D.C. Cir. 2003); 28 U.S.C. § 1491(a)(1); 28 U.S.C. § 1346(a)(2).

Although Plaintiff styles its prayer for relief in part as a request for a declaratory judgment, *see* Compl. at 21, for jurisdictional purposes, "[t]he label attached to the prayer for relief contained in the pleadings is not controlling." *Am. Airlines, Inc. v. Austin*, 778 F. Supp. 72, 76 (D.D.C. 1991). Rather, "the true nature of the relief must be determined." *Id.*; *see, e.g.*, *Kidwell v. Dep't of Army*, 56 F.3d 279, 284 (D.C. Cir. 1995) (explaining that "'jurisdiction under the Tucker Act cannot be avoided by . . . disguising a money claim' as a claim requesting a form of equitable relief"). Here, Plaintiff requests that the Court find or declare that:

- "Defendants have stolen, seized, confiscated, and/or illegally exacted the property of Plaintiff in violation of the Due Process, Equal Protection, and Takings Clauses of the United States Constitution";

- "Defendants' unreasonable delay and failure to adjudicate Plaintiff's claim to return of the funds to be in direct violation of the [APA] and federal regulations"

- "Defendants' actions were arbitrary, capricious, an abuse of discretion, and not in accordance with law"; and

- "Plaintiff is the rightful owner of the Funds."

Compl. at 21.

This requested declaratory relief fails to place Plaintiff's claims within the APA's limited waiver of sovereign immunity because it does not "serve[] a significant purpose, independent of and in meaningful addition to any monetary relief," but rather aims to "establish the monetary liability of the federal government." *D.C. Ret. Bd. v. United States*, No. CIV. A. 85-3693, 1987 WL 9510, at *3 (D.D.C. Apr. 6, 1987). Indeed, Plaintiff ultimately demands that the Court

"[o]rder[ ] Defendants to immediately pay out" the $700 billion at issue and "award[ ] . . . damages." Compl. at 21. Because the gravamen of Plaintiff's complaint is a prayer for monetary compensation totaling at least $700 billion, this Court lacks jurisdiction over Plaintiff's putative APA and constitutional claims. *See, e.g.*, *Kidwell*, 56 F.3d at 284 (noting that "a claim is subject to the Tucker Act and its jurisdictional consequences if, in whole or in part, it explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government"); *Am. Airlines*, 778 F. Supp. at 76 (concluding that Claims Court had exclusive jurisdiction over claims where, despite plaintiffs' contention that they sought equitable relief, they "also pray[ed] for 'judgment ordering GSA to return to the plaintiffs all funds wrongfully withheld'").

Nor would any other court have jurisdiction over these claims. As an initial matter, while the Tucker Act vests the Claims Court with jurisdiction over certain non-tort claims "founded . . . upon the Constitution," only Plaintiff's putative Fifth Amendment takings claim would even theoretically fall within that grant. *Clark v. Libr. of Cong.*, 750 F.2d 89, 1034 n.31 (D.C. Cir. 1984) (explaining that courts "have uniformly held that jurisdiction under [that grant] is limited to claims under the 'takings clause' of the Fifth Amendment"). Moreover, like any other action brought in the Claims Court, Plaintiff's putative takings claim would be subject to a six-year statute of limitations, and this statute of limitations is jurisdictional. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 136-37 (2008); 28 U.S.C. § 2501. As discussed below, *see infra* Part V, Plaintiff's complaint was filed well outside that timeframe—approximately 18 years after its putative claims accrued. Thus, even setting aside Plaintiff's lack of standing and the patent implausibility of the complaint, the Claims Court would lack jurisdiction over

Plaintiff's putative takings claim.[4]

Accordingly, Plaintiff's APA and constitutional claims should be dismissed for lack of subject matter jurisdiction.

## IV.   This Court Is an Improper Venue for Plaintiff's FTCA Claim.

Plaintiff's FTCA claim may dismissed outright because Plaintiff fails to establish that the district of Washington, D.C. is the proper venue for adjudicating the claim. "Venue as to plaintiff's Federal Tort Claims Act claim is governed by 28 U.S.C. § 1402(b), the general venue statute governing suits in which the United States is a defendant." *Bartel v. FAA*, 617 F.Supp. 190, 198 (D.D.C. 1985) (citations omitted). The proper venue for an FTCA claim is in the judicial district where the plaintiff resides or where the cause of action arose. 28 U.S.C. § 1402(b); *Void-El v. O'Brien*, 811 F. Supp. 2d 255, 260 (D.D.C. 2011). Here, the complaint alleges only that the district of Washington, D.C. is the proper venue because a "substantial portion of the events, and the acts complained of giving rise to this action occurred in this district." Compl. ¶ 21. But after making that generic statement, the complaint provides no further elaboration on which acts allegedly took place in Washington, D.C. There is no indication that any alleged seizure order was issued in this district, that the Funds are maintained here, or even that the Funds passed through this district at any point in time. That Treasury's headquarters is in Washington, D.C. is irrelevant for purposes of venue. *See Patel v. Phillips*, 933 F.Supp.2d 153, 164 (D.D.C. 2013) (noting the location of Agency's headquarters is not determinative of venue).

---

[4] Further, as discussed below, *see* Part VI.A.3 *infra*, Plaintiff fails to plausibly allege a takings claim, which also supports dismissal. *See, e.g.*, *Brown v. United States*, 631 F. Supp. 954, 960 (D.D.C. 1986), *aff'd*, 810 F.2d 307 (D.C. Cir. 1987) (declining to transfer plaintiff's monetary claim to the Claims Court "[i]n light of [the court's] conclusion that plaintiff's allegations fail to make out a constitutional claim upon which relief may be granted, and in light of plaintiff's failure to specify any statute which would permit her to recover money damages from the government").

Because the Complaint does not connect Plaintiff—an entity headquartered in Nevada—or the alleged injury to this district, Plaintiff's FTCA claim should be dismissed. *See* 28 U.S.C. § 1406(a). Transfer is not warranted because, as set forth below, *see infra* Parts V.B, VI, Plaintiff fails to state a claim for relief under the FTCA. *See id.*

## V.    Plaintiffs' Constitutional, APA, and FTCA Claims Are Time-Barred.

### A.    Plaintiff's Constitutional and APA Claims Are Time-Barred.

An APA or constitutional claim is barred unless brought "within six years after the right of action first accrues." 28 U.S.C. § 2401(a); *see Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 36 (D.D.C. 2018) (noting that both APA and constitutional challenges are subject to § 2401(a)); *see also* 28 U.S.C. § 2501 (six-year statute of limitations applicable to actions filed in Claims Court). An APA claim accrues when the challenged agency action occurs. *See Impro Prods., Inc. v. Block*, 722 F.2d 845, 850–51 (D.C. Cir. 1983). For a constitutional claim "in which the injury is not of the sort that can readily be discovered when it occurs,'" the "general rule of accrual" is that the limitations period begins to run "when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action." *Sprint Commc'ns Co. v. FCC*, 76 F.3d 1221, 1226 (D.C. Cir. 1996) (quotation marks omitted).

Here, Plaintiff filed its complaint long after the close of the applicable six-year statute of limitations. According to Plaintiff, the government confiscated or seized the Funds in November 2004, and the alleged injury—the "disappearance" of the funds, Compl. ¶¶ 38, 49-50—thus would have been known to Plaintiff's purported corporate predecessor in November 2004 or soon thereafter. Accordingly, the alleged injury or alleged agency action occurred—and any APA or constitutional claim accrued—approximately 18 years ago, well outside the applicable six-year limitations period.

Further, the complaint does not identify any basis to excuse Plaintiff's untimeliness. Apparently recognizing that its putative claims accrued outside the limitations period, Plaintiff alleges that due to the actions of unidentified "Government officials," it was "induced to wait until now to bring this action." Compl. ¶ 50. Specifically, Plaintiff states that it "relied on the assertions and instructions from different Government officials that Plaintiff was acting appropriately by negotiating the return of funds through political channels instead of pursuing its claims in court," and that Plaintiff was told that resorting to a court action would "frustrate the officials' ability to facilitate the return of the Funds." *Id.* Plaintiff also asserts that "various Government officials engaged in a years-long campaign of misdirection and concealment to prevent Plaintiff from determining what happened to the Funds, their precise location, and how their lawful return could be effectuated," but does not specify what actions of Government officials constituted this alleged "misdirection and concealment." *Id.*

These vague and conclusory statements do not render Plaintiff's claims timely. Because the time bar in § 2401(a) is non-jurisdictional, it is subject to equitable tolling. *Jackson v. Modly*, 949 F.3d 763, 778 (D.C. Cir.), *cert. denied*, 141 S. Ct. 875 (2020). However, to establish that it "is entitled to the benefit of equitable tolling," Plaintiff must meet a "high threshold," by demonstrating "(1) that [it] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in [its] way." *Id.* (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The D.C. Circuit has "described equitable tolling as appropriate only in rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Head v. Wilson*, 792 F.3d 102, 111 (D.C. Cir. 2015) (quoting *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014)).

15

Here, Plaintiff's allegations demonstrate neither that Plaintiff has been pursuing its rights "diligently" since the Funds' alleged disappearance in 2004, nor that some "extraordinary circumstance" stood in the way of timely filing. *Jackson*, 949 F.3d at 778. Indeed, even Plaintiff's own conclusory assertions on this point do not indicate diligence—Plaintiff alleges that "the legal owners of the Funds" have been attempting to regain possession of the Funds only "[f]or the last twelve years." Compl. ¶ 6. Plaintiff's vague allegations that the Government interfered with its ability to learn what happened to the Funds, and that Government officials encouraged Plaintiff to pursue resolution by non-judicial means, *id.* ¶ 50, do not demonstrate that Plaintiff was "by dint of circumstances beyond his control, deprived of a reasonable time in which to file suit," *Dyson v. District of Columbia*, 710 F.3d 415, 422 (D.C. Cir. 2013), let alone that some "gross injustice would result" from applying the applicable time bar in this case, *Head*, 792 F.3d at 111. *See also infra* Part IV.B. In sum, it is clear from the face of the complaint that any APA or constitutional claim Plaintiff might raise is untimely.

## B.  Plaintiff's FTCA Claim Is Time-Barred.

Likewise, Plaintiff's putative FTCA claim is time-barred because it was presented to the Department of the Treasury nearly two decades after the relevant harm allegedly occurred. This is well-beyond the FTCA's two-year statutory limitations period.

Pursuant to the FTCA, a claim is untimely "unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). Under the law of this Circuit, a cause of action accrues under the FTCA "by the time a plaintiff has discovered both his injury and its cause, even though he is unaware that the harm was negligently inflicted." *Thomas v. Nicholson*, 539 F. Supp. 2d 205, 213 (D.D.C. 2008), *aff'd sub nom. Thomas v. Shinseki*, Civ. A. No. 08-5349, 2009 WL 2414419 (D.C. Cir. May 7, 2009)

(citing *Sexton v. United States*, 832 F.2d 629, 633 (D.C. Cir. 1987)). The statute of limitations applicable to FTCA claims is non-jurisdictional. *See United States v. Wong*, 575 U.S. 402, 419-20 (2015); *see also Montes v. Janitorial Partners, Inc.*, 859 F.3d 1079, 1084 (D.C. Cir. 2017) (stating that the statute of limitations prerequisite is not jurisdictional, it goes to whether plaintiff stated claim).

Here, the alleged injury occurred on November 4, 2004, when Mr. Wu's investment funds allegedly "disappeared," Compl. ¶ 49, during an electronic transfer to a Wachovia account in the United States. As noted above, *see supra* Part V.A, the parties to the transaction were undoubtedly aware that the Funds were not deposited in the Wachovia account or released back to Mr. Wu's account in Taiwan at that time. Indeed, nothing in the complaint suggests otherwise. *See generally* Compl. ¶¶ 35-50; *see also Cronauer v. United States*, 394 F. Supp. 2d 93, 103 (D.D.C. 2005) (finding that the claims accrued at the date of injury because "the plaintiffs' injuries were apparent immediately"). Accordingly, under the FTCA's statute of limitations, Plaintiff was required to present an administrative claim to the agency within two years of the Funds' alleged disappearance, or by November 4, 2006. *See* 28 U.S.C. § 2401(b). But Plaintiff's claim was not submitted to the Department of the Treasury until July 24, 2021 – nearly 17 years after the alleged injury occurred and well-beyond the two-year requirement set forth in the FTCA.

Moreover, as explained above, any attempt to overcome this time bar fails because Plaintiff has not plausibly alleged any basis for equitable tolling: In the intervening period between the accrual of Plaintiff's putative FTCA claim and filing of its administrative claim, there is no suggestion that Plaintiff was pursuing its rights diligently or that it was prevented by some extraordinary circumstance from timely filing. *See supra* Part V.A. For example, the

complaint does not allege that Plaintiff sought to file suit in this Court or any other court; that it attempted to file an administrative claim with the relevant government agency; or that it sought to extend any deadline for submitting an administrative claim. And notwithstanding Plaintiff's vague accusations of "misdirection and concealment" by unspecified Government officials, Compl. ¶ 50, Plaintiff alleges no facts indicating that it was unable to obtain information vital to its proffered FTCA claim within the applicable limitations period. *See supra* Part IV.A; *Norman v. United States*, 467 F.3d 773, 776 (D.C. Cir. 2006) (noting this Circuit permits equitable tolling but only in extraordinary circumstances such as where, despite all efforts, plaintiff is unable to obtain vital information bearing on the claim).

* * *

Accordingly, Plaintiff's constitutional, APA, and FTCA claims should be dismissed as time-barred.[5]

## VI. Plaintiff Fails To Plausibly Allege Unlawful Conduct under the U.S. Constitution, APA, or FTCA.

Plaintiff fails to plausibly allege any unlawful conduct by the Government Defendants because its complaint consists of conclusory assertions and speculative inferences. Plaintiff alleges that the U.S. Department of the Treasury and/or some other federal government entity, via unspecified means and for unspecified reasons, "illegally confiscated" $700 billion in funds that were being transferred by a Taiwanese investor to Merchants, vaguely described as "an American company doing business with wealthy foreign nationals." Compl. ¶¶ 2, 3. This allegation is wholly conclusory. *See also id.* ¶ 5 (alleging that "the United States government

---

[5] For these same reasons, any attempt to argue equitable estoppel is appropriate should be rejected. *See Rann v. Chao*, 346 F.3d 192, 197 (D.C. Cir. 2003) (noting the Supreme Court has cautioned against the application of the doctrine of equitable estoppel to the government as normally barring its use to undercut statutory exhaustion requirements).

lawlessly intercepted, stole, confiscated, seized, and/or illegally exacted the Funds"). Plaintiff does not identify the specific government entity, officials, or personnel that allegedly confiscated the funds, nor does it allege a motive or reason for the purported confiscation. Also unspecified is the means by which the government purportedly confiscated or seized the funds.

Later in the complaint, Plaintiff adds to these vague and conclusory allegations the assertion that, "[i]n the aftermath of the Funds disappearance," two high government officials—Secretary of the Treasury Henry M. Paulson and Chairman of the Federal Reserve Ben S. Bernanke—confirmed "that Treasury possessed at least a significant portion of the Funds" and "promised Plaintiff resolution." *Id.* ¶ 51. Plaintiff, however, does not specify when these alleged communications occurred, how the Secretary of the Treasury and the Chairman of the Federal Reserve purportedly communicated with Plaintiff, or which officers or representatives of Plaintiff were the recipients of these purported communications. Nor does Plaintiff allege any facts lending plausibility to the allegation that on two unspecified occasions, these two officials "at the last minute declined to execute the agreement" with Plaintiff. *Id.* Plaintiff adds the provocative suggestion, "[o]n information and belief," that the officials declined to execute the agreement to protect the then-President of the New York Federal Reserve, who was purportedly "at least partially responsible for the Funds disappearance," and "various members of Congress and Executive Branch officials" who had purportedly "redirected portions of the Funds." *Id.*; *see also id.* ¶ 52. Plaintiff's allegations that other officials subsequently confirmed that some portion of the Funds were being held by the Department of the Treasury are similarly vague. *See id.* at ¶¶ 52-53.

Plaintiff's suggestion that the alleged disappearance of funds totaling almost a trillion dollars and Plaintiff's alleged subsequent inability to recover the Funds were the product of a

vaguely described machinations among high government officials are akin to complaints that courts routinely dismiss as frivolous. *See, e.g.*, *Klayman v. Rao*, No. 21-CV-02473 (CRC), 2021 WL 4948025, at *7 (D.D.C. Oct. 25, 2021), *aff'd sub nom. Klayman v. Rao*, 49 F.4th 550 (D.C. Cir. 2022) (dismissing pro se attorney's complaint *sua sponte* because, *inter alia*, his "allegations of collusion and judicial bias [were] 'so attenuated and unsubstantial as to be absolutely devoid of merit'" (quoting *Hagans v. Lavine*, 415 U.S. 528, 536 (1974)); *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 232-33 (D.D.C. 2007) (concluding that allegations of the complaint were patently insubstantial where "Plaintiff's proffered facts on which she base[d] her allegations of a conspiracy [were] speculative and unspecific"). Regardless, they do not plausibly allege a cause of action under either the U.S. Constitution, APA, or FTCA.

### A. Plaintiff Fails to Plausibly Allege Any Fifth Amendment Violation.

In Count I of the complaint, Plaintiff invokes the U.S. Constitution's Fifth Amendment, citing the Takings Clause, the Equal Protection Clause, and the doctrines of procedural and substantive due process. Compl. ¶¶ 55-61. Under any of these theories, it fails to plausibly allege a Fifth Amendment violation.

#### 1. Plaintiff Fails To Plausibly Allege a Procedural Due Process Violation.

To state a procedural due process claim, a plaintiff must allege "(1) deprivation by the government; (2) of life, liberty, or property; (3) without due process of law." *Robinson v. Washington Metro. Area Transit Auth.*, 167 F. Supp. 3d 118, 129 (D.D.C. 2016); *see also* U.S. CONST. amend. V ("No person shall be . . . deprived of life, liberty, or property, without due process of law."). Here, the well-pleaded allegations of the complaint establish neither a protected property interest in the Funds at issue, nor that Plaintiff was deprived of those funds by any government action.

Just as the allegations of the complaint do not demonstrate that Plaintiff suffered any injury in fact related to the Funds at issue, *see supra* Part II, they fail to establish that Plaintiff had a protected property interest in those Funds. "To establish a protected liberty or property interest, the plaintiff must demonstrate that the Constitution or a federal or state statute grants him a protected right." *Robinson*, 167 F. Supp. 3d at 129. "In assessing whether or not a Fifth Amendment property interest exists, [the court] look[s] for 'crucial indicia of a property right,' such as the ability to sell, assign, transfer, or exclude." *Hearts Bluff Game Ranch, Inc. v. United States*, 669 F.3d 1326, 1330 (Fed. Cir. 2012) (quoting *Conti v. United States*, 291 F.3d 1334, 1342 (Fed. Cir. 2002)). As noted above, although Plaintiff's claims are premised on the purported 2004 disappearance of a $700 billion investment, Plaintiff alleges that the Funds were intended for Merchants, not Plaintiff. Compl. ¶¶ 23-28. Plaintiff's conclusory assertion that it is Merchants' corporate successor, *id.* ¶ 17, is not entitled to the assumption of truth, and is particularly incredible in light of Plaintiff's contrary representation in its FTCA administrative claim. *See supra* Part II. Moreover, as addressed below, *see infra* Part VI.E.1, Merchants' own purported interest in the Funds is only hazily described: Plaintiff alleges that Merchants solicited an investment from Mr. Wu for infrastructure development and that it was to assume "fiduciary responsibility" for the transfer of the funds. Compl. ¶ 24; *see also id.* ¶¶ 3, 23-28. Because a fiduciary is responsible for managing someone *else's* property, *see* "Fiduciary," Black's Law Dictionary (11th ed. 2019), it is not at all clear, based on the allegations of the complaint, that even Merchants itself had a cognizable property interest in the Funds.

Nor does Plaintiff plausibly allege that the *government* deprived it of any purported property interest. Plaintiff suggests, variously, that (i) the Funds were subject to a "freeze" or "chill" order issued by an unspecified government entity, Compl. ¶ 39; (ii) that the then-

President of the New York Federal Reserve (not a defendant in this case) was "partially responsible" for the Funds' disappearance, *id.* ¶ 51; and (iii) that some portion of the Funds came into the possession of the Department of the Treasury, *id.* ¶¶ 52-53. But Plaintiff does not allege facts sufficient to raise these claims out of the realm of speculation, let alone to support an inference that any Government Defendant in fact "seized" or "confiscated" the Funds. Indeed, as noted above, Plaintiff's allegation that the Funds were subject to a "freeze" or "chill" order is undermined by Plaintiff's simultaneous admission that it received no notice of any "freeze" or "chill" order. *See* Compl. ¶¶ 39, 48. Likewise, Plaintiff's vague and conclusory allegation that Government officials "confirm[ed]" that the Department of the Treasury possessed at least a portion of the Funds lacks any facts regarding what these officials purportedly said, or when or to whom they said it. *Id.* ¶ 51; *see also id.* ¶ 52.

Plaintiff thus fails to state a procedural due process claim.

### 2.  Plaintiff Fails To Plausibly Allege a Substantive Due Process Violation.

"In order to establish a substantive due process claim, a plaintiff must show that the state actor was deliberately indifferent to his constitutional rights such that the conduct 'shocks the conscience.'" *Molina-Aviles v. Dist. of Columbia*, 824 F. Supp. 2d 4, 9 (D.D.C. 2011) (quoting *Estate of Phillips v. Dist. of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2006)). Under the Supreme Court's substantive due process jurisprudence, a "threshold requirement" is "that a challenged . . . action implicate a fundamental right." *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997). The fundamental rights that the Supreme Court has recognized as being protected under the Fifth Amendment "include[] the rights to marry; to have children; to direct the education and upbringing of one's children; to marital privacy; to use contraception; to bodily integrity; and to

abortion." *Id.* at 720 (citations omitted).[6] The Supreme Court has expressed "reluctan[ce]" about "expand[ing] the concept of substantive due process" beyond these categories "because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992).

Here, Plaintiff fails to state a substantive due process claim because it does not plausibly allege a violation of any fundamental right in connection with the purported disappearance of the $700 billion at issue. Indeed, Plaintiff's only proffered justification for its invocation of substantive due process is an allegation that "Defendants . . . acted arbitrarily and capriciously in seizing and/or confiscating" the Funds. Compl. ¶ 58. This conclusory allegation does not demonstrate that the alleged confiscation of funds implicated any fundamental right, or was so "outrageous" that it could fairly "be said to shock the contemporary conscience." *Molina-Aviles*, 824 F. Supp. 2d at 10 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

Accordingly, Plaintiff fails to state a substantive due process claim.

### 3. Plaintiff Fails To Plausibly Allege a Violation of the Takings Clause.

As noted above, *see supra* Part VI.A.1-2, even if it plausibly alleged a constitutional violation, both this Court and the Claims Court would lack jurisdiction over Plaintiff's putative takings claim. But Plaintiff also fails to plausibly allege any violation of the Takings Clause.

The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. To determine whether a plaintiff has stated a takings claim, a court must first decide whether the plaintiff has identified any cognizable property interest that is the subject of the taking. *Hearts Bluff*, 669 F.3d at 1329.

---

[6] The Supreme Court abrogated its prior recognition of a right to abortion in *Dobbs v. Jackson Women's Health Org.*, No. 19-1392, 597 U.S. ___ (June 24, 2022).

This is a threshold inquiry because "only persons with a valid property interest at the time of the taking are entitled to compensation." *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001). "Second, if the court concludes that a cognizable property interest exists, it determines whether that property interest was 'taken.'" *Hearts Bluff*, 669 F.3d at 1329.

Here, Plaintiff cannot satisfy the threshold property interest element. As noted above, Plaintiff alleges that the Funds were being invested by a third-party individual, Mr. Tien Chuan Wu, in a third-party company, Merchants. Compl. ¶¶ 23-28. Plaintiff did not even exist at the time of the alleged taking, let alone have the ability to "sell, assign, or [ ] transfer" the Funds. *Conti*, 291 F.3d at 1342. Thus, Plaintiff has not alleged a cognizable property interest that was the subject of the alleged taking. Nor does Plaintiff plausibly allege that the Funds at issue were "taken" by the government. While "[a] compensable taking can occur" both "through the government's physical invasion or appropriation of private property," and "by government regulations that unduly burden private property interests," *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1213 (Fed. Cir. 2005), Plaintiff does not plausibly allege that the Government Defendants had any involvement in the alleged disappearance of the Funds. *See supra* Part VI.A.1. Accordingly, Plaintiff fails to allege a plausible violation of the Takings Clause.

### 4. Plaintiff Fails To Plausibly Allege an Equal Protection Violation.

To the extent Plaintiff invokes the Equal Protection Clause, its allegations are similarly insufficient. "In order to establish an equal protection violation, a litigant is required to show that 'the defendant acted with discriminatory purpose,' meaning '[i]t involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Smothers v. Dist. of Columbia*, No. 19-cv-2632 (ABJ), 2020 WL

5411294, at *5 (D.D.C. Sept. 9, 2020) (quoting *Iqbal*, 556 U.S. at 676) (citation omitted). Here, even assuming Plaintiff's fanciful allegations that the U.S. government seized the purported $700 billion transfer to Merchants were plausible, Plaintiff alleges no facts whatsoever suggesting that such seizure was made with a "discriminatory purpose." Indeed, Plaintiff does not allege that it (or Merchants) is a member of some "identifiable group," let alone that the purported seizure or confiscation of the $700 billion occurred because of Plaintiff's or Merchants' membership in that group. Accordingly, Plaintiff fails to state an equal protection claim.

### B.   Plaintiff Fails To Plausibly Allege a Fourth Amendment Violation.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable . . . seizures, shall not be violated." U.S. Const. amend. IV. "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Here, for the reasons explained above, Plaintiff had no possessory interest in the $700 billion allegedly at issue, and it has not plausibly alleged that the Government Defendants were responsible for the Funds' alleged disappearance, or otherwise "meaningful[ly] interfere[d]" with any interest in that property. *Soldal*, 506 U.S. at 61. Accordingly, Count II of the complaint, asserting a Fourth Amendment violation, should be dismissed for failure to state a claim.

### C.   Plaintiff Fails To Plausibly Allege an "Arbitrary and Capricious" Claim Under the APA.

The APA grants judicial review to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. However, only "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial

review." *Id.* § 704. Among other things, a reviewing court under the APA may set aside agency action that is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A).

Plaintiff fails to state an "arbitrary and capricious" claim under the APA because it has not plausibly alleged that it (or its purported corporate predecessor, Merchants) has been "adversely affected or aggrieved" by any agency action, let alone "final agency action for which there is no other adequate remedy in a court." *Id.* §§ 702, 704. Plaintiff claims that "Defendants' theft, confiscation, and/or seizure of Plaintiff's Funds constitutes a 'final action' under 5 U.S.C. § 704." Compl. ¶ 93. But, as noted above, Plaintiff's allegations that the Government Defendants confiscated, stole, or seized the Funds consist of bare conclusions, devoid of any factual matter, accepted as true, that would allow the Court "to draw the reasonable inference" that any Government Defendant was responsible for the alleged disappearance of the Funds. *Iqbal*, 556 U.S. at 678. Accordingly, the Court should dismiss Count IV of the complaint for failure to state a claim on which relief can be granted.

### D. Plaintiff Fails to Plausibly Allege an APA Claim Based on "Unlawfully Withheld or Unreasonably Delayed" Agency Action.

Under 5 U.S.C. § 706(1), a court may "compel agency action unlawfully withheld or unreasonably delayed." However, as the Supreme Court has explained, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

Plaintiff fails to plausibly allege agency action "unlawfully withheld or unreasonably delayed" because Plaintiff does not identify any discrete action that a Government Defendant was required to take. Plaintiff's claim rests on an allegation that the Government failed take action required by the Civil Asset Forfeiture Reform Act ("CAFRA"). *See* Compl. ¶¶ 80-85.

CAFRA provides, among other things, that, "[n]ot later than 90 days after a claim [under the statute] has been filed, the Government shall file a complaint for forfeiture . . . or return the property pending the filing of a complaint," 18 U.S.C. § 983(a)(3)(A), and that if the Government does not file such a complaint or return the property, or take certain steps in connection with a criminal forfeiture proceeding, "the Government shall promptly release the property," *id.* § 983(a)(3)(B).

Plaintiff asserts that the Government violated CAFRA and 5 U.S.C. § 706(1) because the Government did not file a forfeiture complaint within 90 days of receiving Plaintiff's "Seized Asset Claim," as required by CAFRA. Compl. ¶¶ 84-85. However, CAFRA only applies if the relevant property was seized in a nonjudicial civil forfeiture proceeding. *See* 18 U.S.C. § 983(a)(2)(A). As the Third Circuit has explained:

> Although subsection (a)(2)(A) of § 983 allows a seized asset claim to be filed "after the seizure," it also requires that the claim be directed to "property seized in a *nonjudicial civil forfeiture proceeding.*" *Id.* (emphasis added). This language presupposes that a nonjudicial forfeiture is pending before a proper seized asset claim can be filed.

*Langbord v. United States Dep't of Treasury*, 832 F.3d 170, 182 (3d Cir. 2016). Here, Plaintiff does not allege that the $700 billion at issue was seized in a nonjudicial civil asset forfeiture proceeding, let alone that Plaintiff filed a seized asset claim within the timeframe prescribed by the statute. *See* 18 U.S.C. § 983(a)(2)(B) (providing that a claim must be filed "not later than the deadline set forth in a personal notice letter," or "if that letter is not received, . . . not later than 30 days after the date of final publication of notice of seizure"). Thus, even if Plaintiff's conclusory allegation that the Government Defendants confiscated or seized the Funds were taken as true, Plaintiff has not plausibly alleged that the Government's failure to file a forfeiture

complaint or "return the Funds," Compl. ¶¶ 84-87, is agency action unlawfully withheld or unreasonably delayed under the APA.

### E.  Plaintiff's FTCA Claim Fails under Rule 12(b)(1) or Rule 12(b)(6) Because Plaintiff Fails to State a Claim for Conversion.

In Count 5, Plaintiff attempts to invoke the FTCA, which waives the United States' sovereign immunity for certain torts committed by federal employees while acting within the scope of their employment. *See* 28 U.S.C. § 1346(b). Section 1346(b) contains the following six requirements—all of which must be satisfied in order for an action to qualify within the FTCA's jurisdictional grant: the claim must be "'[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Meyer*, 510 U.S. at 477 (quoting 28 U.S.C. § 1346(b) (bracketed numerals added by the Court)). As the Supreme Court recently held, "a plaintiff must plausibly allege all six FTCA elements not only to state a claim upon which relief can be granted but also for a court to have subject-matter jurisdiction over the claim." *Brownback v. King*, 141 S. Ct. 740, 749 (2021). "That means a plaintiff must *plausibly* allege that 'the United States, if a private person, would be liable to the claimant under state law both to survive a merits determination under Rule 12(b)(6) and to establish subject-matter jurisdiction." *Id.* (emphasis added). "[W]here a plaintiff fails to plausibly allege an element that is both a merit element of a claim and a jurisdictional element, the district court may dismiss the claim under Rule 12(b)(1) or Rule 12(b)(6)." *Id.* at 749 n.8.

The only tort identified by Plaintiff is one for conversion of the transferred funds. *See* Compl. ¶¶ 101-110. In Washington, D.C., a conversion claim exists if there is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other full value of the chattel." *Fed. Fire Prot. Corp. v. J.A. Jones/Tompkins Builders, Inc.,* 267 F. Supp. 2d 87, 92 n. 3 (D.D.C. 2003). In other words, a defendant will be liable if he can show "(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) of the personal property of another, (4) in denial or repudiation of that person's rights thereto." *O'Callaghan v. Dist. of Columbia,* 741 F. Supp. 273, 279 (D.D.C.1990) (citing *Duggan v. Keto,* 554 A.2d 1126, 1137 (D.C. 1989)).

One may be liable for conversion to a person who is in possession of property or who has the right to immediate possession of the property. *Curaflex Health Services, Inc. v. Bruni*, 877 F. Supp. 30, 32 (D.D.C. 1995); *see also Bazuaye v. United States*, 41 F.Supp.2d 19, 22 (D.D.C. 1999) (noting that a claim for conversion is not defeated by non-ownership if the plaintiff has an immediate right to possession). The personal property at issue in conversion claims is generally chattel, but money can also be the subject of a conversion claim "if the plaintiff has the right to a specific identifiable fund of money." *McNamara v. Picken*, 950 F. Supp. 2d 193, 194 (D.D.C. 2013) (citation omitted). But "[a] conversion claim cannot stand where . . . plaintiff is owed at most some unspecified, unidentified portion of a larger pool of funds." *Van Dorn Retail Mgmt., Inc. v. Sovran Bank/DC Nat'l, Inc.*, No. 90-2974, 1991 WL 222061, at *7 (D.D.C. Oct. 9, 1991)).

### 1. Plaintiff Fails To Plausibly Allege a Proprietary Interest.

To adequately plead a claim for conversion, Plaintiff must establish a proprietary interest in the transferred funds. *See Curaflex*, 877 F. Supp. at 32. On this point, Plaintiff states that it is the "rightful owner" of a claim to the funds, Compl. ¶ 102, due to Merchants' claim being

transferred to it by "operation of law." Compl. ¶ 17. However, as noted above, *see supra* Part II, this is merely a legal conclusion, and thus not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 678. Other than Plaintiff's self-serving conclusory statements, the complaint is devoid of facts indicating Plaintiff obtained rights to any identifiable portion of the funds.

Indeed, the well-pleaded factual allegations of the complaint do not even establish that Merchants had any proprietary interest in the funds that it could have transferred to Plaintiff. *See McNamara*, 950 F.Supp.2d at 195 (for purposes of a conversion claim, "the Court must determine whether plaintiff has a property interest in that money, such that an action for a conversion claim is proper, or simply a contractual right"). The complaint alleges that Merchants solicited an investment from Mr. Wu for infrastructure development and that it was to assume "fiduciary responsibility" for the transfer of the funds. Compl. ¶ 24; *see also id.* ¶¶ 3, 23-28. Tellingly, the complaint provides no additional insight into the alleged business relationship, including whether the agreement was put in writing. Nor does the Complaint elaborate on the parties' understanding of the fiduciary relationship or define the term "fiduciary" as used in the complaint. A "fiduciary" typically is defined as one who acts for the benefit of another on all matters within the scope of their relationship or someone who must exercise a high standard of care in managing another's money or property. "Fiduciary," Black's Law Dictionary (11th ed. 2019). It is not defined as one who obtains ownership rights over the property of another. *See id.*

Moreover, it not even clear that Merchants was entitled to possession of any identifiable portion of the transferred funds. *See Curaflex*, 877 F. Supp. at 32 (stating that a conversion claim for money is permissible "only if the plaintiff has the right to a specific identifiable fund of money"). The complaint provides the funds were to be transferred from the Bank of Taiwan to a Wachovia account in the United States and that the funds were to be used for infrastructure

30

development. *See e.g.*, Compl. ¶¶ 1-4, 23-29. But other than Plaintiff's bare bones assertions, the complaint alleges no facts supporting a reasonable inference that Merchants owned the Wachovia account. For example, the complaint does not specify where the account was located, any number associated with the account, and it does not expressly state that Merchants controlled the account. *See generally* Compl. ¶¶ 23-49. The complaint also lacks sufficient detail as to what portion of the funds would remain in the account given that the funds were to be used elsewhere for infrastructure development and another company was hired to manage the investment. *See* Compl. ¶ 25 ("Merchants engaged Tropos Capital Corporation of America . . . to manage the investment"). Because the funds were earmarked for other use, and another company would control the funds, is not apparent that Merchants was entitled to immediate possession of any identifiable portion that could be transferred to Plaintiff. *See Bazuaye*, 41 F.Supp.2d at 22 (recognizing that a claim for conversion is not defeated by non-ownership if the plaintiff has an immediate right to possession).

Accordingly, the complaint does not plausibly allege that Plaintiff had any proprietary right whatsoever in the funds. Compl. ¶ 17. *See Kaempe v. Myers*, 367 F.3d 958, 964 (D.C. Cir. 2004) (finding that when there has been no dispossession of property rights, there can be no action for conversion).

### 2.   The Complaint Does Not Allege that The Government Exercised Unlawful Control Over the Funds.

Even if one were to assume that Plaintiff has sufficiently alleged a proprietary interest, the complaint does not plausibly allege that the Government exhibited "any unlawful exercise of ownership, dominion or control" over the funds. *Keto*, 554 A.2d at 1137. In particular, the complaint provides no details as to which entity within the Department of the Treasury allegedly diverted the funds, and it points to no statutory or regulatory provision providing the Department

31

of the Treasury with the authority to issue such an order. *See* Compl. ¶¶ 25-50. As noted above, *see supra* Part V.A, Plaintiff's vague assertions that it engaged various Government officials, at unspecified times, regarding the whereabouts of the Fund, *see* Compl. ¶¶ 50-52, are insufficient to support a reasonable inference that any Government Defendant was responsible for the alleged disappearance of that money. Plaintiff's speculation and naked assertions are insufficient to support a reasonable inference that the Government exercised unlawful control or dominion over the funds. *See Iqbal*, 556 U.S. at 678.

For these reasons, Plaintiff has failed to state a claim for conversion under Washington, D.C. law. Because Plaintiff fails to state a claim under Rule 12(b)(6), it has not satisfied the requirements for a waiver of sovereign immunity, leaving this Court without subject matter jurisdiction over Plaintiff's putative FTCA claim. *See Brownback*, 141 S. Ct. at 749. Accordingly, this Court should dismiss the claim under Rule 12(b)(1), Rule 12(b)(6), or both. [7]

## VII. Plaintiff's Claim for a "Writ of Mandamus" Should Be Dismissed Under Rule 12(b)(1).

The Court should dismiss Count VII under Rule 12(b)(1) because Plaintiff has not demonstrated a basis for mandamus jurisdiction under 28 U.S.C. § 1361. The remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances. Mandamus is only available if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff. *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002). "These three threshold requirements are jurisdictional; unless all are

---

[7] Plaintiff also fails to establish that its' claim falls outside the scope of the FTCA's exclusions contained in 28 U.S.C. § 2680. *See* 28 U.S.C. §§ 2680(a), (c), (e), (h), (i), and (k); *see also Kugel v. United States*, 947 F.2d 1504, 1506 (D.C. Cir. 1991) (noting that although Congress has waived the Government's immunity for injuries caused by the negligent or wrongful acts of a government employee, it has not waived immunity for every type of tort).

met, a court must dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). Thus, "mandamus jurisdiction under § 1361 merges with the merits." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (en banc). Moreover, even if a plaintiff can carry its burden of satisfying the threshold elements, "whether mandamus relief should issue is discretionary." *Id.*

Plaintiff's allegations in support of his request for a writ of mandamus merely recite the legal standard set forth in § 1361 and summarize the claims raised in the preceding counts. For the reasons set forth above, Plaintiff has not plausibly alleged any claim for relief, let alone demonstrated a "clear right to relief."

Nor has Plaintiff established any clear duty to act. Plaintiff alludes to the Government's broad "duty to adhere to due process of law," and unspecified "statutory duties." Compl. ¶¶ 120, 123. But "a writ of mandamus will issue only where the duty to be performed is ministerial and the obligation to act peremptory, and clearly defined. . . . [T]he duty must be clear and undisputable." *13th Reg'l Corp. v. U.S. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980) (quotation marks and citation omitted). As explained above, Plaintiff fails to plausibly allege that the Government has any duty to act under CAFRA, let alone some purely ministerial duty where "the obligation to act is peremptory." *Id.*; *see supra* Part VI.D. And Plaintiff identifies no other "clear and undisputable" duty that could support mandamus jurisdiction.

Accordingly, Plaintiff's request for a writ of mandamus should be dismissed for lack of jurisdiction.

## VIII.   Plaintiff Has Not Stated a Cognizable Claim for "Declaratory Judgment."

The final count in Plaintiff's complaint is styled as a claim for "Declaratory Judgment (28 U.S.C. § 2201)." Compl. at 20. However, the Declaratory Judgment Act, 28 U.S.C. § 2201, is not

an independent source of federal jurisdiction and does not provide a cause of action. *See Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011). Moreover, set forth above, though styled as "declaratory," the relief Plaintiff seeks is actually monetary. *See supra* Part III; Compl. ¶ 127 (seeking a judgment "[d]eclaring that Plaintiff is the rightful owner of the Funds" and "[o]rdering Defendants to immediately pay out those Funds . . . to Plaintiff"). And, in any case, Plaintiff has not otherwise alleged any cognizable cause of action. *See supra* Part VI.A-E. Accordingly, Plaintiff's "Declaratory Judgment" claim should be dismissed for lack of subject matter jurisdiction and failure to state a claim on which relief can be granted.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's claims against the Government Defendants pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Procedure.

Dated:  November 1, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

DIANE KELLEHER
Assistant Director, Federal Programs Branch

*/s/ Elizabeth Tulis*
ELIZABETH TULIS
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: 202-514-9237
E-mail: elizabeth.tulis@usdoj.gov

34

*/s/ Kristin B. McGrory*
KRISTIN B. MCGRORY
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 888 Ben Franklin Station
Washington, DC 20044
Phone: 202-616-4206
Email: Kristin.B.McGrory@usdoj.gov

*Attorneys for the Government Defendants*

## CERTIFICATE OF SERVICE

I certify that on November 1, 2022, I electronically filed the foregoing GOVERNMENT DEFENDANTS' MOTION TO DISMISS and MEMORANDUM IN SUPPORT OF GOVERNMENT DEFENDANTS' MOTION TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM with the Clerk of Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document, which suffices for service to the attorneys of record who have entered an appearance. *See* L.R. 5.4(d).

Dated:  November 1, 2022                    Respectfully submitted,


*/s/ Elizabeth Tulis*
ELIZABETH TULIS
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: 202-514-9237
E-mail: elizabeth.tulis@usdoj.gov

*/s/ Kristin B. McGrory*
KRISTIN B. MCGRORY
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
P.O. Box 888 Ben Franklin Station
Washington, DC 20044
Phone: 202-616-4206
Email: Kristin.B.McGrory@usdoj.gov