**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| LAUREATUS GROUP, LLC, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 22-2103 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 23, 24 |
| | : | | |
| UNITED STATES DEPARTMENT | : | | |
| OF THE TREASURY, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING DTCC AND GOVERNMENT DEFENDANTS' MOTIONS TO DISMISS; GRANTING PLAINTIFF'S REQUEST FOR LEAVE TO AMEND COMPLAINT**

## I. INTRODUCTION

Plaintiff Laureatus Group, LLC ("Plaintiff" or "Laureatus") brings the instant suit against various governmental and non-governmental defendants, alleging that the United States Department of the Treasury unlawfully seized $700 billion in cash funds (the "Funds") that were transferred in November 2004 by the Bank of Taiwan but that never reached their intended destination at the U.S.-based Wachovia Securities ("Wachovia").  According to Laureatus, Defendants Depository Trust & Clearing Corporation ("DTCC") and Depository Trust Company ("DTC") (collectively, "DTCC Defendants") held or sequestered the Funds in response to either a chill or freeze order issued by the U.S. Government, which then seized the funds and urged Laureatus to pursue the return of the Funds through negotiations rather than litigation.

Almost 18 years following the alleged seizure, Laureatus filed its Complaint bringing claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*, and the Fourth and Fifth Amendments of the United States Constitution against DTCC Defendants.  Laureatus

also raises those same claims, in addition to a claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 2671, *et seq.*, against named U.S. Government agencies and officials (collectively, "Government Defendants").  Further, Laureatus brings a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) against unnamed John Doe defendants ("John Doe Defendants").  Invoking the Mandamus Act, 28 U.S.C. § 1361, and the Declaratory Judgment Act, 28 U.S.C. § 2201, Laureatus seeks, among other relief, not only a declaratory judgment finding it to be the rightful owner of the Funds, but also an unspecified award of damages and a writ of mandamus compelling Government Defendants to return the $700 billion to Laureatus in restitution.  For the reasons detailed below, the Court grants DTCC and Government Defendants' respective motions to dismiss, in addition to dismissing Plaintiff's claim against John Doe Defendants.

## II.  BACKGROUND

### A.  Factual Background[1]

Merchants International Holding Ltd. ("Merchants"), a company incorporated in South Dakota that conducted business with wealthy foreign nationals, sought to "negotiate for, and assume fiduciary responsibility for, the transfer of more than $2 trillion into the United States for business investment purposes."  Compl. ¶¶ 3, 24, ECF No. 1.  Merchants engaged Tropos Capital Corporation of America ("Tropos"), a Delaware-based corporation, to manage the investment of $700 billion of the proceeds.  *Id.* ¶ 25.  In July 2004, Merchants solicited a $2.1 trillion (USD) investment from a wealthy Taiwanese investor, Mr. Tien Chuan Wu.  *Id.* ¶ 26.

---

[1] In deciding this motion to dismiss, the Court recites the facts as alleged by Laureatus. This background section does not represent the Court's findings of fact.

The parties agreed to transfer Mr. Wu's investment funds, totaling over $700 billion, from his savings account at the Bank of Taiwan to Merchants in the United States.  *Id.* ¶¶ 29, 35. The transfer would be facilitated by Wachovia using the Automated Customer Account Transfer Service ("ACATS") system, which "executes the transfer of financial securities from a trading account at one institution to the trading account at another."  *Id.* ¶ 30.  ACATS was developed by the National Securities Clearing Corporation ("NSCC"), a subsidiary of DTCC, "a private holding company owned collectively by banks and financial institutions."  *Id.* ¶ 31.

On or about November 4, 2004, the Bank of Taiwan initiated a transfer of at least $700 billion to Wachovia in the United States via Wachovia's intermediary back office operation entities, which included DTCC Defendants, Cede & Co., and/or First Clearing, LLC (collectively, the "Clearing Entities").  *Id.* ¶¶ 36–37.  Although the Funds were then no longer reflected on the Bank of Taiwan's books, they were not credited at Wachovia either.  *Id.* ¶¶ 36, 38.  Rather, according to Laureatus, the Funds were halted by the Clearing Entities in response to a chill or freeze order issued by the U.S. Government.  *Id.* ¶ 39.  The Funds were "then moved to the risk and compliance side of Wachovia's Clearing Entities, where they were placed in chill or suspense."  *Id.* ¶ 41.  The Funds did not come to DTC's systems via Cede & Co. and were not book-entered by DTC.  *Id.* ¶ 42.

At some point, the Funds "simply disappeared."  *Id.* ¶ 49.  The Funds had been "moved from the Clearing Entities to Defendant [the United States Department of the Treasury] and were never book-entered or received by Wachovia or returned to the Bank of Taiwan."  *Id.* ¶ 46.  Nor were the parties to the transaction notified about a chill or freeze or informed of the reasons why the Funds had been intercepted.  *Id.* ¶ 48.

In subsequent years, various high-ranking U.S. Government officials allegedly confirmed that the transfer from the Bank of Taiwan had occurred and that the Treasury possessed a significant portion of the Funds.  *Id.* ¶¶ 51–52.  These officials told Laureatus that it "was acting appropriately by negotiating the return of the [F]unds through political channels instead of pursuing its claims in court, which . . . would frustrate the officials' ability to facilitate the return of the Funds."  *Id.* ¶ 50.  Specifically, then-Treasury Secretary Henry M. Paulson and then-Chairman of the Federal Reserve Ben S. Bernanke confirmed that Treasury "possessed at least a significant portion of the Funds" and "promised Plaintiff resolution."  *Id.* ¶ 51.  Although Laureatus negotiated and agreed in writing to such a resolution with then-Under Secretary of the Treasury for International Affairs Timothy D. Adams, the officials twice "at the last minute" declined to execute the agreement.  *Id.*  Likewise, then-Director of the Federal Reserve Board's Management Division Richard A. Anderson informed Laureatus's Board of Directors that the ACATS transfer from the Bank of Taiwan to Wachovia had in fact occurred and that he had determined the "location within the Treasury Department of what remained of the Funds."  *Id.* ¶ 52.  Nevertheless, Laureatus never reached a resolution with the Treasury Department because

> (a) then-President of the New York Federal Reserve, Timothy Geithner, was personally involved in the freezing of the Funds, [and] was therefore at least partially responsible for the [Funds'] disappearance, and faced legal and political liability as a result; and (b) various members of Congress and Executive Branch officials had impermissibly redirected portions of the Funds for purposes other than their return to the Bank of Taiwan or disbursement to Plaintiff.

*Id.* ¶ 51.  As recently as July 2016, then-Counsel to the Inspector General Richard Delmar had verified that Treasury possessed what remained of the Funds but nevertheless denied to Laureatus's agent that the Funds had been transferred to the Treasury.  *Id.* ¶ 53.

Plaintiff Laureatus is a privately-held Nevada limited liability company formed on April 13, 2006 that has a principal place of business in Carson City, Nevada.  *Id.* ¶ 9.  On or about

4

November 18, 2008, Merchants assigned its rights to the Funds, including its claim against the United States, to Laureatus "for valuable consideration." Compl. Ex. A, at 3, ECF No. 1. In July 2021, Laureatus presented its claim under the FTCA to the U.S. Government. *See id.* at 1. In a letter dated February 18, 2022, the Treasury Department denied the claim. Compl. Ex. B, at 2–3, ECF No. 1.

**B.  Procedural Background**

On July 18, 2022, Laureatus filed its Complaint against DTCC Defendants, Government Defendants, and John Doe Defendants. *See generally* Compl. Laureatus raises various claims against both DTCC Defendants and Government Defendants. First, according to Laureatus, DTCC Defendants have, by seizing the Funds without due process or just compensation, violated Merchants' rights—and thus, Laureatus's rights, as the "corporate successor" to Merchants— under the Fourth and Fifth Amendments of the Constitution. *Id.* ¶¶ 55–70. Second, Laureatus argues, DTCC Defendants' actions violate the APA. *Id.* ¶¶ 71–100. Third, Laureatus contends that DTCC Defendants have committed the tort of conversion under D.C. law. *Id.* ¶ 105; Pl.'s Opp'n to DTCC Defs.' Mot. to Dismiss at 7, ECF No. 27. Laureatus further raises each of these claims—under the Fourth and Fifth Amendments, the APA, and D.C. law—against Government Defendants. Compl. ¶¶ 55–70, 71–100. In addition, Laureatus alleges that Government Defendants have violated the FTCA, *id.* ¶¶ 101–10, and raises a *Bivens* claim against unnamed government officials, whom Laureatus has identified only as John Doe Defendants, *id.* ¶¶ 111– 17.

On November 1, 2022, DTCC Defendants and Government Defendants separately filed their motions to dismiss. *See generally* DTCC Defs.' Mot. to Dismiss, ECF No. 23; Gov't Defs.' Mot. to Dismiss, ECF No. 24. Laureatus responded to each motion to dismiss. *See generally*

Pl.'s Opp'n to DTCC Defs.' Mot. to Dismiss; Pl.'s Opp'n to Gov't Defs.' Mot. to Dismiss, ECF

No. 26.  DTCC Defendants and Government Defendants replied.  *See generally* DTCC Defs.'

Reply Supp. Mot. to Dismiss ("DTCC Defs.' Reply"), ECF No. 28; Gov't Defs.' Reply Supp.

Mot. to Dismiss ("Gov't Defs.' Reply"), ECF No. 29.  The motions are thus now ripe for

consideration.

### III.  LEGAL FRAMEWORK

#### A.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, *see Gen. Motors Corp. v. EPA*, 363 F.3d

442, 448 (D.C. Cir. 2004), and must therefore address jurisdiction as a "threshold matter," *Steel

Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).  "A court considering a Rule

12(b)(1) motion must assume the truth of all material factual allegations in the complaint and

construe the complaint liberally, granting a plaintiff the benefit of all inferences that can be

derived from the facts alleged."  *McFadden v. Washington Metro. Area Transit Auth.*, 949 F.

Supp. 2d 214, 219 (D.D.C. 2013) (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139

(D.C. Cir. 2011)) (cleaned up).  Even so, "a '[p]laintiff's factual allegations in the complaint . . .

will bear closer scrutiny in resolving a 12(b)(1) motion than resolving a 12(b)(6) motion for

failure to state a claim.'"  *Turan Petroleum, Inc. v. Ministry of Oil & Gas of Kaz.*, 406 F. Supp.

3d 1, 8 (D.D.C. 2019) (quoting *Grand Lodge of the Fraternal Ord. of Police v. Ashcroft*, 185 F.

Supp. 2d 9, 13–14 (D.D.C. 2001)), *aff'd*, No. 21-7023, 2022 WL 893011 (D.C. Cir. Mar. 25,

2022).  "Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a

preponderance of the evidence."  *Grell v. Trump*, 330 F. Supp. 3d 311, 316 (D.D.C. 2018) (citing

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  In addition, a court may "undertake an

independent investigation to assure itself of its own subject matter jurisdiction" and "consider

facts developed in the record beyond the complaint." *CFA Inst. v. Andre*, 74 F. Supp. 3d 462, 465 (D.D.C. 2014) (quotation marks and citations omitted).

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), and therefore is "a necessary 'predicate to any exercise of [Article III courts'] jurisdiction,'" *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.D.C. 2012) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc)).  "The 'irreducible constitutional minimum' for standing is (i) the party must have suffered a concrete and particularized injury in fact, (ii) that was caused by or is fairly traceable to the actions of the defendant, and (iii) is capable of resolution and likely to be redressed by judicial decision."  *Sierra Club v. EPA*, 755 F.3d 968, 973 (D.C. Cir. 2014) (citing *Lujan*, 504 U.S. at 560–61).  In other words, to establish standing as a constitutional matter, a plaintiff must "demonstrate the existence of a 'personal injury fairly traceable to the opposing party's allegedly unlawful conduct and likely to be redressed by the requested relief.'"  *Delta Air Lines, Inc. v. Export–Import Bank of U.S.*, 85 F. Supp. 3d 250, 260 (D.D.C. 2015) (citation omitted).  To show an injury in fact, a plaintiff must have suffered "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted).  Fundamentally, the standing inquiry seeks to determine whether there exists a sufficient "nexus between the status asserted by the litigant and the claim he presents . . . to assure that he is a proper and appropriate party to invoke federal judicial power."  *Flast v. Cohen*, 392 U.S. 83, 102 (1968).

**B.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

To meet the requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint."  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Requiring "more than a sheer possibility that a defendant has acted unlawfully," the plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citation omitted)).

"Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient.  *Id.*  Further, a court need not accept a plaintiff's legal conclusions as true, *see id.*, nor presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.  Finally, a court "may also disregard 'the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice.'"  *Doe #1 v. Am. Fed'n*

*of Gov't Emps.*, 554 F. Supp. 3d 75, 92 (D.D.C. 2021) (quoting *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004)).

"[M]otions to dismiss based on a statute of limitations defense are generally disfavored, and the D.C. Circuit has 'repeatedly held [that] courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint.'" *Doe v. Kipp DC Supporting Corp.*, 373 F. Supp. 3d 1, 7 (D.D.C. 2019) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)). The D.C. Circuit has previously observed that "[t]here is an inherent problem in using a motion to dismiss for purposes of raising a statute of limitations defense" because "[a]lthough it is true that a complaint sometimes discloses such defects on its face, it is more likely that the plaintiff can raise factual setoffs to such an affirmative defense." *Richards v. Mileski*, 662 F.2d 65, 73 (D.C. Cir. 1981). Even so, the D.C. Circuit "[did] not hold that the use of a motion to dismiss is always improper to raise a statute of limitations defense." *Id.* "Courts may dismiss a complaint under Rule 12(b)(6) on statute of limitations grounds if 'the factual allegations in the complaint . . . clearly demonstrate all elements of the statute of limitations defense *and* that the plaintiff has no viable response to the defense.'" *Brink v. XE Holding, LLC*, No. 11-cv-01733, 2022 WL 3334503, at *3 (D.D.C. May 19, 2022) (quoting *United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 38 (D.D.C. 2014)); *see also Jones*, 549 U.S. at 215 (noting that a "complaint is subject to dismissal for failure to state a claim" when the allegations "show that relief is barred by the applicable statute of limitations"). In other words, "the Court should grant a motion to dismiss on the ground of statute of limitations only if no reasonable person could disagree on the date on which the cause of action accrued, and the complaint on its face is conclusively time-barred." *Thompson v. HSBC Bank USA, N.A.*, 850 F. Supp. 2d 269, 274 (D.D.C. 2012) (citations omitted and cleaned up).

## IV.  ANALYSIS

As Laureatus recognizes, it has alleged an "extraordinary" set of facts in this case.  Pl.'s Opp'n to Gov't Defs.' Mot. to Dismiss at 1.  According to Laureatus, not only did the United States government seize $700 billion being transferred in a single transaction by one Taiwanese investor[2]—apparently only a portion of a total investment worth $2.1 trillion by this single individual—but Laureatus then spent years negotiating for the money's return with the U.S. Government, which induced Laureatus to abstain from bringing suit even though those government officials actually intended to obfuscate and shield various individuals from personal liability for their involvement.  Nearly two decades after the alleged seizure at issue, Laureatus now brings suit—yet neither the estate of the mysterious investor[3] nor the banks involved in the transaction are parties to this suit, which, if successful, would have the Court order the transfer of $700 billion from the Treasury to Laureatus, rather than to the investor.[4]

---

[2] As a point of comparison, the gross domestic product ("GDP") of Taiwan in 2020 was $635.5 billion.  *Taiwan*, Office of the United States Trade Rep., https://ustr.gov/countries-regions/china/taiwan (last accessed on Aug. 7, 2023); *see, e.g.*, *Nat'l Ass'n for Advancement of Colored People v. United States Postal Serv.*, 496 F. Supp. 3d 1, 6 n.1 (D.D.C. 2020), *enforcement granted*, No. 20-CV-2295 (EGS), 2020 WL 6441317 (D.D.C. Oct. 27, 2020) (taking judicial notice of information on official government websites).

[3] According to an attachment to Plaintiff's Complaint, Mr. Wu is deceased.  *See* Compl. Ex. B at 1.

[4] The Court also notes that proceeding without joining Mr. Wu's estate or his representative would potentially be problematic under Federal Rule of Civil Procedure 19, which provides in relevant part:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19.  Not only is there a clear risk here of impairing Mr. Wu's potential interest in the Funds, but Government Defendants could also be exposed to inconsistent and/or double

The Court dismisses this case for decidedly less intriguing reasons.  First, Laureatus's claims against DTCC Defendants fail because DTCC Defendants are private, not governmental entities, and enjoy absolute immunity from liability for the conduct forming the basis of Laureatus's claims.  Second, Laureatus's claims against Government Defendants and John Doe Defendants fail because Laureatus has not met its burden in showing why the Court should toll the statutes of limitations applicable to Laureatus's claims.[5]

## A.  Claims Against DTCC Defendants

Laureatus fails to show that it may bring its constitutional and APA claims against DTCC Defendants, which are private entities.  In its Complaint, Laureatus describes DTCC as "a New York corporation with its principal place of business in New York City, New York" and as "an industry-owned firm, meaning it is owned by the brokerage firms, investment and clearing banks, and mutual fund companies that are members of the national markets."  Compl. ¶ 14. Laureatus then also describes DTC, "a wholly-owned subsidiary of DTCC," as "a limited purpose trust company formed under the Banking laws of New York, with its principal place of business in New York City, New York."  *Id.* ¶ 15.  Laureatus nevertheless argues that: (1) DTCC Defendants are "quasi-governmental" authorities subject to claims under the APA; and (2) Laureatus may raise its Fourth and Fifth Amendment claims against DTCC Defendants because

---

obligations due to his absence.  Federal Rule of Civil Procedure 12(b)(7) provides that a complaint may be dismissed for "failure to join a party under Rule 19."  Fed. R. Civ. P. 12(b)(7).

[5] Because the Court dismisses Laureatus's claims for relief against both DTCC and Government Defendants, "neither the Mandamus Act nor the Declaratory Judgment Act are cognizable" given that "Plaintiff has no clear right to relief."  *Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 6 (D.D.C. 2009); *see also In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005) (holding that mandamus is cognizable only where "the plaintiff has a clear right to relief"); *Walpin v. Corp. for Nat. and Community Serv.*, 718 F. Supp. 2d 18, 24 (D.D.C. 2010) ("Relief under the Declaratory Judgment Act 'is not cognizable as a separate cause of action, but is more properly included in the[ ] prayer for relief.'" (quoting *Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp. 37, 45 (D.D.C. 1996))).

they acted as agents or instrumentalities of the government.[6]  Pl.'s Opp'n to DTCC Defs.' Mot. to Dismiss at 1.  Neither argument is availing.

### 1. APA Claims

Laureatus asserts that DTCC Defendants have the authority to exercise the powers of a federal agency and should accordingly be deemed agencies for purposes of applying the APA. *See* Pl.'s Opp'n to DTCC Defs.' Mot. to Dismiss at 6.  As another court in this District has acknowledged, "[t]he law on the simple question of what is an agency is quite complex." *McKinney v. Caldera*, 141 F. Supp. 2d 25, 31 (D.D.C. 2001) (quoting *Lee Constr. Co., Inc. v. Fed. Reserve Bank*, 558 F.Supp. 165, 172 (D. Md. 1982)).  In conducting such an analysis, courts have examined the "structure, function, and mandate" of the entity, *id.* at 33, considering whether it exercises "substantial independent authority," *Flaherty v. Ross*, 373 F. Supp. 3d 97, 106 (D.D.C. 2019) (quoting *Dong v. Smithsonian Inst.*, 125 F.3d 877, 882 (D.C. Cir. 1997)).

Laureatus thus urges the Court to treat DTCC Defendants as quasi-governmental authorities acting for the Securities and Exchange Commission ("SEC") because of DTC's status as a self-regulatory organization ("SRO").  Both parties agree that DTC is an SRO.  Pl.'s Opp'n to DTCC Defs.' Mot. to Dismiss at 6; DTCC Defs.' Reply at 2.  DTCC is also an SRO.  *See Dexter v. Depository Tr. & Clearing Corp.*, 406 F. Supp. 2d 260, 264 (S.D.N.Y. 2005), *aff'd*, 219 F. App'x 91 (2d Cir. 2007) (citing *In re Depository Trust Co.*, SEC Release No. 34–47978, 2003 WL 21288541, at *6 & n. 50 (June 3, 2003)).  It is true that, as the cases that Laureatus cites explain, *see* Pl.'s Opp'n to DTCC Defs.' Mot. to Dismiss at 6, "Congress and the SEC have

---

[6] Though its Complaint was initially unclear as to which claims Laureatus sought to bring against which defendants, Laureatus clarified in its opposition to DTCC Defendants' motion to dismiss that it was not bringing claims under the FTCA or *Bivens* against DTCC Defendants, but did seek to raise a common law tort of conversion claim under D.C. law against DTCC Defendants.  Pl.'s Opp'n to DTCC Defs.' Mot. to Dismiss at 7, 14.

delegated significant responsibility for regulation of the securities markets to SROs, operating under the supervision of the SEC," *Dexter*, 406 F. Supp. 2d at 263.  But Laureatus's argument elides the caselaw in this District and others stating clearly that the APA does not apply to SROs. Because the APA applies only to agencies of the federal government, *Mwabira-Simera v. Howard Univ.*, 692 F. Supp. 2d 65, 70 (D.D.C. 2010), "the APA does not apply to SROs" such as DTCC Defendants, which are not federal agencies within the meaning of the statute, *North v. Smarsh, Inc.*, 160 F. Supp. 3d 63, 78 (D.D.C. 2015); *see also In re Henry James Faragalli, Jr.*, Release No. 37991, 1996 WL 683707, at *10 n.36 (Nov. 26, 1996) (collecting cases illustrating that SROs are "private organizations . . . not subject to the requirements applicable to a government agency").  Laureatus's claims under the APA against DTCC Defendants must thus be dismissed.

### 2. Fourth and Fifth Amendment Claims

Laureatus's Fourth and Fifth Amendment claims must also fail because DTCC Defendants have absolute immunity from liability for the conduct forming the basis of those claims.  A plaintiff asserting a claim under the Fourth and Fifth Amendments must show government action or action by a private party as an instrument or agent of the government.  *See Trazell v. Wilmers*, 975 F. Supp. 2d 133, 141–42 (D.D.C. 2013).  Laureatus argues that DTCC Defendants seized the Funds, without providing notice or due process, to implement a chill or freeze order issued by the U.S. Government, thus acting as its instrument or agent.  Pl.'s Opp'n to DTCC Defs.' Mot. to Dismiss at 12–13.  DTCC Defendants counter that not only has Laureatus not alleged sufficient state action to raise its constitutional claims, but that their actions, taken pursuant to their roles as SROs, are immune from suit.  DTCC Defs.' Reply at 7.

"Immunity doctrines protect private actors when they perform important governmental functions." *Hofman v. Fid. Brokerage Servs., LLC*, No. 2:23-cv-00881-MCS-PVC, 2023 WL 3872564, at *6 (C.D. Cal. May 8, 2023).  SROs, for example, "are absolutely immune 'from suit for conduct falling within the scope of the SRO's regulatory and general oversight functions.'" *Dexter*, 406 F. Supp. 2d at 262; *see also Scher v. Nat'l Ass'n of Sec. Dealers, Inc.*, 386 F. Supp. 2d 402, 406–08 (S.D.N.Y. 2005), *aff'd sub nom. Scher v. Nat'l Assoc. of Sec. Dealers, Inc. (NASD)*, 218 F. App'x 46 (2d Cir. 2007) (finding an SRO and its wholly owned subsidiary immune from suit for actions taken pursuant to quasi-governmental powers delegated to it by the Securities Exchange Act).  In examining whether an SRO is entitled to immunity, "courts examine the nature of the complained-of function performed by the SRO and evaluate whether the function is an exercise of quasi-governmental powers rather than conduct of private business." *Hofman*, 2023 WL 3872564, at *6.

In *Scher*, the Southern District of New York concluded that the plaintiff's complaint against the National Association of Securities Dealers, Inc. ("NASD") was barred by the NASD's absolute immunity.  386 F. Supp. 2d at 406.  As an SRO subject to the supervision of the SEC, the NASD (and by extension, its subsidiary) was immune from the plaintiff's Fifth Amendment and due process claims because the NASD's conduct arose from the "regulatory, investigatory, disciplinary, adjudicatory, and oversight functions delegated to the NASD under the Securities Exchange Act." *Id.* at 407.  Moreover, the court explained, the plaintiff had failed to show that the NASD's conduct constituted state action in violation of the Fifth Amendment. *Id.*  Highlighting the caselaw finding consistently that the NASD was a private actor and not a government agency, the court found that the NASD's actions could not bind or be imputed to the government.  *Id.*  Rejecting the plaintiff's arguments that it would be contradictory to find both

that the NASD's conduct did not suffice for state action but nevertheless enjoyed immunity, the court stated: "[I]t is by no means 'inconsistent' to find that, on the one hand, the NASD exercises insufficient state action to trigger constitutional protections in a case such as this, while nevertheless holding that the NASD is entitled to absolute immunity in the exercise of its quasi-public regulatory duties." *Id.* at 408.

Likewise, here, DTCC Defendants enjoy immunity as SROs from Laureatus's Fourth and Fifth Amendment claims. Laureatus does not claim that DTCC Defendants took any actions outside of their official functions as SROs; indeed, Laureatus's argument rests on the premise that DTCC Defendants acted in their capacity as SROs in abiding by the Government's alleged order. *See* Pl.'s Opp'n to DTCC Defs.' Mot. to Dismiss at 6, 11–14. Thus, consistent with prior precedent on the liability of SROs, DTCC Defendants are absolutely immune from liability for the conduct alleged by Laureatus. *See Hofman*, 2023 WL 3872564, at *6; *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008) ("When an SRO acts under the aegis of the Exchange Act's delegated authority, it is absolutely immune from suit for the improper performance of regulatory, adjudicatory, or prosecutorial duties delegated by the SEC."). Laureatus may counter that DTCC Defendants have engaged in misconduct that falls outside of its duties as an SRO. But this distinction is immaterial: "[e]ven assuming arguendo that DTCC's conduct was incorrect and unlawful, it is nevertheless protected." *Hofman*, 2023 WL 3872564, at *7 (quoting *Dexter*, 406 F. Supp. 2d at 263) (cleaned up); *see DL Cap. Grp., LLC v. Nasdaq Stock Mkt., Inc.*, 409 F.3d 93, 98 (2d Cir. 2005) ("[A]llegations of bad faith, malice, and even fraud—all of which may be relevant to a *qualified* immunity analysis—cannot, except in the most unusual of circumstances, overcome *absolute* immunity."); *In re Series 7*, 548 F.3d at 115 ("Courts have declined to craft exceptions [to the absolute immunity accorded to

SROs] for bad faith, fraud, negligence, or even gross negligence." (internal citations omitted)).

Laureatus's claims under the Fourth and Fifth Amendments against DTCC Defendants must

therefore be dismissed.

### 3.  Common Law Conversion Claim

For the same reasons explained above, DTCC Defendants are immune from liability for

Laureatus's claim for the common law tort of conversion.  *See Dexter*, 406 F. Supp. 2d at 264

(dismissing common law claim of conversion against DTCC based on its immunity to suit); *cf. In

re Series 7*, 548 F.3d at 115 (concluding that Congress had created comprehensive structure

under the Securities Exchange Act for regulation of the securities industry, indicating an intent to

preempt state common law causes of action against the NASD arising out of duties that were

performed by the NASD only because of regulations under the Act).  Accordingly, the Court

dismisses Laureatus's claim of conversion against DTCC Defendants.

### B.  Claims Against Government Defendants

Although it remains unclear to the Court whether Laureatus even has standing to bring its

claims against Government Defendants, the Court need not decide the issue because Laureatus's

claims are time-barred by their respective statutes of limitations.  Based on the current record,

the Court declines to exercise its powers to toll the limitations periods, given that Laureatus has

offered only vague, unsupported assertions of wrongdoing by Government Defendants.  Because

the Court dismisses Laureatus's claims against Government Defendants on such grounds, it need

not reach the parties' other arguments.

### 1.  Standing

As a threshold matter, it is unclear to the Court whether Laureatus even has the necessary

Article III standing to bring its claims against Government Defendants.  Government Defendants

assert that, because the Anti-Assignment Act bars Laureatus from bringing its claims against the United States, Laureatus has not alleged an injury in fact and lacks standing.  Gov't Defs.' Mot. to Dismiss at 7–10.  Government Defendants point to Laureatus's FTCA administrative claim, *see id.* at 9, attached as an exhibit to its Complaint, which stated that, "for valuable consideration, Merchants sold, transferred, and assigned to Laureatus, in writing, all of its ownership rights, title, and interest in and to the Funds . . . including this claim against the United States related thereto, and the demand represented by it," Compl. Ex. A, at 3.  Such an assignment cannot provide the basis for suit, Government Defendants contend, because the Anti-Assignment Act prohibits the "assignment of any part of a claim against the United States Government or of an interest in that claim; or the authorization to receive payment for any part of the claim," 31 U.S.C. § 3727(a)(1)-(2), except that "[a]n assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued," *id.* § 3727(b).  Laureatus responds that the Anti-Assignment Act does not apply here because Laureatus is the "corporate successor to Merchants and claims that are assigned by operation of law, such as by merger, consolidation, or reorganization, fall outside of the" Act.  Pl.'s Opp'n to Gov't Defs.' Mot. to Dismiss at 2.

The Anti-Assignment Act indeed makes clear that "a claim against the United States may not be assigned to a third party unless [its] technical requirements are met."  *United States v. Kim*, 806 F.3d 1161, 1169 (9th Cir. 2015).  Where the Act applies, it "is a total bar on the assignment of claims against the United States."  *Id.* at 1175; *see also Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1113 (Fed. Cir. 2013).  "In effect, the [Anti-Assignment Act] serves as a defense that the Government can raise against a claim . . . ."  *Kim*, 806 F.3d at 1169 (quoting *Murkeldove v. Astrue*, 635 F.3d 784, 794 (5th Cir. 2011)).

Finding certain equitable exceptions to the Anti-Assignment Act's plain language, however, the Supreme Court has concluded that the Act "will not void assignments that arise by operation of law, voluntary transfers by will, or 'general assignments for the benefit of creditors.'"  *Id.* at 1170 (quoting *United States v. Shannon*, 342 U.S. 288, 292 (1952)); *see DDS Holdings, Inc. v. United States*, 158 Fed. Cl. 431, 437 (2022) (recognizing exemption from Anti-Assignment Act for transfer of claim "effected by consolidation or merger to the successor of a claimant corporation").

As Government Defendants argue, Laureatus fails to address directly whether its claims in fact fall under the exception to the Anti-Assignment Act made for assignments arising by operation of law.  Laureatus provides no factual detail evidencing that it is Merchants' "corporate successor" as it alleges in conclusory fashion.  As part of its FTCA administrative claim, Laureatus apparently attached a copy of Merchants' November 2008 assignment of rights to Laureatus.  *See* Compl. Ex. A, at 2.  Yet it has not furnished any such documentation here.  And in response to Government Defendants' motion to dismiss, Laureatus states only that it "*could* allege additional facts that Merchants assigned all of its assets to [P]laintiff as the result of a necessary corporate reorganization, whereby Merchants *effectively* merged with Laureatus when it assigned all of its assets to Laureatus, Laureatus assumed the same board of directors as Merchants, and Merchants subsequently wound down and ceased to exist."  Pl.'s Opp'n to Gov't Defs.' Mot. to Dismiss at 2 n.2 (emphasis added).  Setting aside the questions of what constitutes an "effective" merger or whether such a merger would suffice to make Laureatus the successor-in-interest to Merchants' claim per the Anti-Assignment Act, Laureatus's Complaint does not contain factual detail supporting its bare assertion of standing.

Without more, the Court could reasonably find that Laureatus's allegations fail to establish that it has standing to bring its claims against Government Defendants. *See Ctr. for Legal Reform v. Rakowsky*, No. 3:14-CV-01674-JFA, 2014 WL 6389709, at *2 (D.S.C. Nov. 14, 2014) (finding that the plaintiff lacked standing to bring suit where the plaintiff only alleged that it was the successor-in-interest to a contract party but did not provide any documentation or evidence supporting the assertion); *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), *holding modified by City of Littleton v. Z.J. Gifts D–4, L.L.C.*, 541 U.S. 774 (2004) ("It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." (internal quotation marks and citations omitted)).  The Court need not do so, however, because it may dismiss Laureatus's claims against Government Defendants on the additional grounds detailed below.[7]

## 2.  Statutes of Limitations

### a.  APA and Constitutional Claims

As Government Defendants argue, the statutes of limitations on Laureatus's constitutional and APA claims against Government Defendants have long passed.  Gov't Defs.' Mot. to Dismiss at 14–18.  Pursuant to 28 U.S.C. § 2401(a), "every civil action commenced against the United States," including APA and constitutional claims, "shall be barred unless the complaint is filed within six years after the right of action first accrues."  *Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 36 (D.D.C. 2018); *see Harris v. FAA*, 353 F.3d 1006, 1009 (D.C. Cir. 2004) (APA claims); *Impro Prods., Inc. v. Block*, 722 F.2d 845, 851 n.12 (D.C. Cir. 1983)

---

[7] To the extent Laureatus endeavors to amend its Complaint, it would be well-advised to fortify its allegations beyond those asserted.  And, because standing is a jurisdictional defense for which the Court can look beyond the pleadings, *see Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 585 F. Supp. 3d 63, 70 (D.D.C. 2022), *aff'd*, No. 22-5095, 2023 WL 4378303 (D.C. Cir. July 7, 2023), evidentiary support is likely to be beneficial as well.

(constitutional claims).  The right of action under the APA "first accrues on the date of the final

agency action."  *Washington All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 892

F.3d 332, 342 (D.C. Cir. 2018) (quoting *Harris*, 353 F.3d at 1010).  "Constitutional claims

accrue 'when the injured party discovers—or in the exercise of due diligence should have

discovered—that it has been injured.'"  *Worthington v. Off. of Nat'l Drug Control Pol'y*, No. 19-

cv-0081, 2020 WL 1509167, at *6 (D.D.C. Mar. 30, 2020), *aff'd sub nom. Worthington v. United

States Off. of Nat'l Drug Control Pol'y*, No. 20-5113, 2020 WL 9311952 (D.C. Cir. Nov. 12,

2020) (quoting *Sprint Commc'ns Co. v. FCC*, 76 F.3d 1221, 1228 (D.C. Cir. 1996)).  Here, the

complained-of action is alleged to have occurred in approximately November 2004, though the

Complaint does not specify when, precisely, the Funds apparently disappeared.  Compl. ¶¶ 36,

47.  The statutes of limitations on Laureatus's constitutional and APA claims thus ran out in

approximately November 2010—nearly 12 years before Laureatus filed its Complaint in July

2022.

    Laureatus asks, however, that the Court toll the statutes of limitations for these claims.  A

plaintiff seeking equitable tolling bears the burden of establishing two elements: "(1) that [the

plaintiff] has been pursuing [its] rights diligently, and (2) that some extraordinary circumstance

stood in [its] way."  *Vuyyuru v. Bank of N. Am., Inc.*, No. 21-cv-762, 2022 WL 1124800, at *5

(D.D.C. Apr. 14, 2022), *aff'd sub nom. Vuyyuru v. LSF9 Master Participation Tr., Inc.*, No. 22-

7153, 2023 WL 2905258 (D.C. Cir. Apr. 10, 2023) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408,

418 (2005)).  Both prongs must be met to warrant equitable tolling.  *Id.* (citing *Menominee

Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255–56 (2016)).  The D.C. Circuit has held

consistently that a court should exercise its equitable power to toll statutes of limitations

"sparingly," *Johnson v. Holder*, 598 F. Supp. 2d 50, 56 (D.D.C. 2009), *aff'd*, 377 F. App'x 31

(D.C. Cir. 2010), and only "in extraordinary and carefully circumscribed instances," *Summers v. Howard Univ. Hosp.*, 300 F. Supp. 3d 268, 270 (D.D.C. 2018) (quoting *Mondy v. Secretary of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988)).  Equitable tolling may be appropriate where, for example, "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," *Escamilla v. Nuyen*, 227 F. Supp. 3d 37, 55 (D.D.C. 2017) (quoting *Norman v. United States*, 467 F.3d 773, 776 (D.C. Cir. 2006)), or if, "despite all due diligence [the plaintiff] is unable to obtain vital information bearing on the existence of [its] claim," *id.* (quoting *Smith–Haynie v. D.C.*, 155 F.3d 575, 579 (D.C. Cir. 1998)).  By contrast, "[e]quitable tolling is unwarranted where a litigant has failed to exercise due diligence in preserving his legal rights."  *Hewitt v. Rice*, 560 F. Supp. 2d 61, 65 (D.D.C. 2008) (quoting *Commc'ns Vending Corp. of Arizona v. F.C.C.*, 365 F.3d 1064, 1075 (D.C. Cir. 2004)).  Ultimately, the Court has "sole discretion" in deciding whether to apply equitable tolling. *Escamilla*, 227 F. Supp. 3d at 55 (citing *Smith v. Holder*, 806 F.Supp.2d 59, 63 (D.D.C. 2011)).

Laureatus avers that it has met its burden of showing that equitable tolling is warranted because it has alleged that various government officials "actively misled" and "lulled" Laureatus into "[forgoing] court action to instead negotiate through political channels."  Pl.'s Opp'n to Gov't Defs.' Mot. to Dismiss at 18; *see also id.* at 1 (stating that "various high-level officials of the United States Treasury and Federal Reserve . . . told [P]laintiff to [forgo] court action and instead seek the return of the funds through political channels," leading Laureatus to not bring its action "until it had exhausted negotiations through the administrations of three different United States Presidents").  Seeking to correct an error in its Complaint that stated that Laureatus had sought to recover the Funds over the last 12 years, Laureatus clarifies that it has in fact sought to recover the Funds over the 16 years preceding the Complaint.  *Id.* at 1 n.1.  Government

Defendants assert in response that not only has Laureatus failed to account for whether Merchants diligently pursued its rights during the approximately two years immediately following the alleged seizure, but that Laureatus has also not shown any misconduct that would suffice as an extraordinary circumstance meriting equitable tolling.  Gov't Defs.' Reply at 7–10.

Based on the facts alleged, the Court finds that Government Defendants have the better argument here for the latter reason, rather than the former.  As Government Defendants point out, Laureatus's claim that it has acted diligently to preserve its rights over the last 16 years would place the beginning of its efforts sometime in 2006.  But the FTCA administrative claim that Laureatus appears to have filed in July 2021 also maintains that the "legal owners of the Funds" had "used every reasonable, ordinary and legal method to trace these missing Funds and regain possession to them" over the past 16 years—which would place the start of those efforts in 2005 instead.  Compl. Ex. A, at 3.  Laureatus was not formed until April 2006, and it did not allegedly gain ownership of the right to the Funds until November 2008.  *See* Compl ¶ 9; Compl. Ex. A, at 3.  Presumably, then, Laureatus is alleging either that it acted diligently to recover the Funds upon its formation or that Merchants had been doing so since 2005.  There is, moreover, the additional problem that Laureatus does not account for its efforts during the entire length of the approximately 18 years, with what appears to be the most recent development alleged dating from July 2016.  *See* Compl. ¶ 53. Government Defendants rightly highlight the gap in Laureatus's timeline, and the absence of evidence here tends to support a finding that Laureatus did not diligently pursue its rights.  *See Marshall v. Honeywell Tech. Sols., Inc.*, 536 F. Supp. 2d 59, 68 (D.D.C. 2008) (finding that the plaintiff, who "filed her age discrimination administrative charge 735 days after the last of her alleged age-related injuries, and 435 days after the time to file such a charge had expired," had not provided evidence that she acted with due diligence to

pursue her legal rights).  But the Court cannot with certainty conclude at this stage whether Laureatus did or did not act diligently to pursue its rights—if only because the Court is again as an initial matter unable to discern even the basic fact of what entity took what actions and when to protects its alleged rights in the Funds.  The Complaint, as a general matter, is nearly devoid of clear allegations as to which actions took place and when during the extremely long period that elapsed before Laureatus brought its claims.

The Court need not decide the issue on the first prong, however, given that Laureatus's argument fails at the second prong of showing that an extraordinary circumstance prevented Laureatus from timely filing its claim.  Laureatus's argument for equitable tolling rests on various allegations of government officials inducing Laureatus to refrain from bringing its claims in court—that various government officials negotiated a resolution with Laureatus, only to decline to execute the agreement at the last minute on two occasions; that these officials confirmed over the years that the Treasury was in possession of the funds; and that they also told Laureatus that it "was acting appropriately by negotiating the return of the funds through political channels instead of pursuing its claims in court, which Plaintiff was told would frustrate the officials' ability to facilitate the return of the Funds."  Compl. ¶¶ 50–53.

It is indeed the case that the D.C. Circuit has previously "excused parties who were misled about the running of a limitations period, whether by an adversary's actions, by a government official's advice upon which they reasonably relied, or by inaccurate or ineffective notice from a government agency required to provide notice of the limitations period[.]"  *Young v. Sec. & Exch. Comm'n*, 956 F.3d 650, 657 (D.C. Cir. 2020) (quoting *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997) (citations omitted)).  In *Jarrell v. U.S. Postal Service*, 753 F.2d 1088 (D.C. Cir. 1985), for instance, the D.C. Circuit remanded the appellant's Title VII

claim to the district court, which had not considered whether equitable tolling of the claim's 30-day filing period was warranted. *Id.* at 1091. Although the appellant had not, as required by the regulations, contacted an Equal Employment Opportunity ("EEO") Counselor within 30 days of becoming aware of the information giving rise to his allegations in November 1980, *id.* at 1090, he had "alleged that he did not contact an EEO Counselor because he relied on the assurances of an EEO officer that the officer was attempting to have the information expunged from the records," *id.* at 1091–92. "[W]hen it was clear that no progress was being made in the case," the appellant met with an EEO Counselor in May 1982, and subsequently filed a Title VII complaint. *Id.* at 1089. The appellant "clearly pleaded equitable considerations which may excuse noncompliance with the filing requirement," the D.C. Circuit explained, because it was "the result of justifiable reliance on the advice of another government officer." *Id.* at 1091–92.

Laureatus would have this Court, consistent with the principles underlying cases such as *Jarrell*, toll the statutes of limitations on its claims based on the alleged conduct of the government officials with which it negotiated. But equitable tolling is "[m]eant to 'ensure[ ] that the plaintiff is not, by dint of circumstances *beyond his control*, deprived of a reasonable time in which to file suit.'" *Harris v. CitiMortgage, Inc.*, 878 F. Supp. 2d 154, 161 (D.D.C. 2012) (emphasis added) (quoting *Chung v. U.S. Dep't of Just.*, 333 F.3d 273, 279 (D.C. Cir. 2003)). Accordingly, the Supreme Court has set forth that the second prong of the equitable tolling test "is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Menominee Indian Tribe of Wis.*, 577 U.S. at 257; *see, e.g.*, *Vuyyuru,* 2022 WL 1124800, at *5. Importantly, and fatal to its argument, Laureatus has not shown here that it was prevented from bringing its claim by circumstances beyond its control. Even if the Court accepted the allegations in Laureatus's Complaint as true, Laureatus

has shown only that it made a calculated decision in allowing the statutes of limitations on its claims to pass in the hopes that its negotiations with the Government would bear fruit. According to Laureatus's Complaint, various government officials told Laureatus that it "was acting appropriately by negotiating the return of the funds through political channels instead of pursuing its claims in court."  Compl. ¶ 50.  Laureatus does not allege that Government Defendants actively misled it about its deadlines for bringing suit.  *See Young*, 956 F.3d at 657; *Dyson v. D.C.*, 710 F.3d 415, 422 (D.C. Cir. 2013).  Nor does Laureatus allege any reason why it must necessarily have abided by the "instructions" from the government officials to abstain from bringing suit.  Certainly, a party handling a $700 billion investment and holding discussions with government officials at the highest levels would be considered a sophisticated party with access to appropriate advice.

Although equitable tolling may be appropriate "where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction," *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984), Laureatus has offered only the bare speculation that the government officials strung it along in negotiations to prevent it from litigating, *see* Compl. ¶¶ 51–52 (claiming that, "on information and belief," the officials had no intention of executing the agreement to resolve the issue because they sought to protect Mr. Geithner).  "[A] litigant seeking equitable tolling cannot rely on 'conclusory and vague claims' to survive a motion to dismiss."  *DeSimone v. TIAA Bank, FSB*, No. 20-cv-6492, 2021 WL 4198274, at *5 (S.D.N.Y. Sept. 14, 2021) (quoting *Mandarino v. Mandarino*, 408 F. App'x 428, 430 (2d Cir. 2011) (summary order)) (cleaned up); *see also Lessmann v. Tenet*, 362 F. Supp. 2d 33, 36 (D.D.C. 2005) (declining to toll statute of limitations because the plaintiff's claim to have failed to timely file EEO charge due to fear of retaliation by the CIA was "inherently incredible and [did] not warrant equitable tolling");

*Galloway v. Watt*, 185 F. Supp. 3d 130, 135 n.1 (D.D.C. 2016) (declining to entertain or permit discovery on theory for equitable tolling where the plaintiff has not offered evidence in support). After all, "[i]f mere conjecture were sufficient to prevent dismissal on statute of limitations grounds, then any plaintiff could avoid dismissal of properly time-barred claims and force their opponent into discovery." *DeSimone*, 2021 WL 4198274, at *5. Laureatus's allegations are particularly deficient due to the lack of factual detail as to who said what to whom and when. Without such factual detail, it is impossible to assess whether government misconduct lulled Laureatus into inaction and, if so, for how long. Quite simply, Laureatus asks this Court for the extraordinary relief of equitably tolling statutes of limitations that ran out over a decade ago, but has not met its heavy burden in showing that the Court ought to exercise a power that it should only use sparingly.

### b.  FTCA Claim

For the same reasons, Laureatus's FTCA claim against Government Defendants is also time-barred by the statute of limitations. The FTCA "requires that claims be presented to the agency in question within two years of accrual, and filed in court within six months after denial by the agency." *Jones v. United States*, 934 F. Supp. 2d 284, 291 (D.D.C. 2013) (quoting *Mittleman v. United States*, 104 F.3d 410, 413 (D.C. Cir. 1997)); *see* 28 U.S.C. § 2401(b). A claim under the FTCA accrues when "a plaintiff has discovered both his injury and its cause, even though he is unaware that the harm was negligently inflicted." *Harrison v. United States*, No. 16-cv-1829, 2018 WL 4680204, at *5 (D.D.C. Sept. 28, 2018) (quoting *United States v. Kubrick*, 444 U.S. 111, 120 (1979)) (cleaned up). As is the case with Laureatus's constitutional and APA claims, Laureatus's FTCA claim appears to have accrued in November 2004. Compl. ¶¶ 36, 47. But Laureatus did not file its FTCA claim until July 2021, nearly 15 years too late.

*See* Compl. Ex. A.  Laureatus makes the same arguments for equitable tolling of its FTCA claim as those previously described, and the Court declines to exercise its power to toll the statute of limitations here for the same reasons.

### C.  Claims Against John Doe Defendants

Finally, Laureatus's *Bivens* claims against John Doe Defendants are dismissed *sua sponte* by the Court.  Laureatus asserts that John Doe Defendants—"presently unknown agents of the Government"—violated the Fourth Amendment by seizing the Funds.  Compl. ¶¶ 112–13. Although Government Defendants acknowledge Laureatus's *Bivens* claim, they do not appear to move to dismiss the *Bivens* claim, *see* Gov't Defs.' Mot. to Dismiss at 5, but do make a broader argument that Laureatus had not plausibly alleged a Fourth Amendment violation, *see id.* at 25.[8]

Nevertheless, consistent with the D.C. Circuit's direction to "'weed out' insubstantial *Bivens* suits 'expeditiously,'" the Court proceeds to consider whether Laureatus's *Bivens* claim is time-barred.  *Simpkins v. D.C. Gov't*, 108 F.3d 366, 370 (D.C. Cir. 1997) (quoting *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)); *see also Manning v. Esper*, No. 12-cv-1802, 2019 WL 281278, at \*22 (D.D.C. Jan. 22, 2019) (noting that the court could turn to the merits of the defendants' motion to dismiss on behalf of John Doe defendants despite a finding of insufficient service).  Because "*Bivens* claims are implied causes of action rather than ones granted by statute, they lack a federal statute of limitations period." *Jacksonville Urb. League, Inc. v. Azar*, No. 18-cv-2275, 2019 WL 3208686, at \*4 (D.D.C. July 16, 2019).  The Court will thus "look to analogous provisions in state law" to determine statute of limitations.  *Doe v. Dep't of Justice*,

---

[8] Reflecting some confusion on DTCC and Government Defendants' part as to which of Laureatus's claims were made against which defendants, DTCC Defendants argue that any *Bivens* claim against them should be dismissed.  DTCC Defs.' Mot. to Dismiss at 16–17. Laureatus subsequently clarified that it was not bringing a *Bivens* claim against DTCC Defendants.  Pl.'s Opp'n to DTCC Defs.' Mot. to Dismiss at 14.

753 F.2d 1092, 1114 (D.C. Cir. 1985).  Other courts in this District have, consistent with the

D.C. Code, applied a three-year limitations period to *Bivens* claims.  *See Jacksonville Urb.*

*League, Inc.*, 2019 WL 3208686, at *4 (collecting cases).  The Court does the same here, which

means that the statute of limitations on Laureatus's *Bivens* claim ran out in approximately

November 2007.  Although the limitations period may be equitably tolled, *see, e.g., Doe v.*

*United States*, No. 22-843, 2023 WL 4874694, at *4 (2d Cir. Aug. 4, 2023), the Court again

declines to do so for the reasons explained above.[9]

### D.  Motion to Amend

Laureatus requests leave to amend its Complaint should "the Court grant the government's

Motion to Dismiss, in whole or in part," but does not offer argument as to why the Court should

grant such leave.  Pl.'s Opp'n to DTCC Defs.' Mot. to Dismiss at 14; Pl.'s Opp'n to Gov't Defs.'

Mot. to Dismiss at 30.  Pursuant to the Federal Rules of Civil Procedure, a party may amend its

pleading once as a matter of course within 21 days after serving it, or, if the pleading is one to

which a responsive pleading is required, 21 days after service of a responsive pleading or 21

days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.  Fed. R. Civ. P.

15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's

written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

---

[9] Although the Court takes no position on whether a *Bivens* remedy would be viable for Laureatus's current claims, the Court observes that the Supreme Court has severely limited the contexts in which a *Bivens* remedy can even be found to exist.  Indeed, the Supreme Court has "emphasized that recognizing a cause of action under *Bivens* is 'a disfavored judicial activity,'" *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)), because "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts," *id.* at 1800.  "'[E]ven a single sound reason to defer to Congress' is enough to require a court to refrain from creating such a remedy."  *Id.* at 1803 (quoting *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1937 (2021)).

The decision to grant or deny leave to amend "is committed to a district court's discretion." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam).  Although leave to amend a complaint "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), "the Supreme Court has instructed federal courts to consider the following factors: (1) undue delay; (2) the movant's bad faith or dilatory motive; (3) repeated failures to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by virtue of permitting an amendment; and (5) futility of the amendment," *Norris v. Salazar*, 746 F. Supp. 2d 1, 3 (D.D.C. 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  DTCC Defendants have requested that the Court dismiss all of Laureatus's claims against them with prejudice because amendment to the Complaint would be futile.  DTCC Defs.' Reply at 2. Government Defendants have not responded to Laureatus's request to amend.  *See generally* Gov't Defs.' Reply.

Despite Laureatus's feeble request, the Court grants its request to amend its Complaint, given the enormity of its allegations.  Should Laureatus continue to bring claims against DTCC Defendants, it should be prepared to support its decision to do so and offer an explanation beyond the arguments that the Court has already rejected here.  Moreover, Laureatus should take care to provide the factual detail that it has assured the Court that it will be able to expound (such as that supporting standing) and address the deficiencies that the Court has noted above, in addition to bolstering its other allegations as needed to support the claims that the Court has not yet addressed on the merits.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** DTCC and Government Defendants' respective Motions to Dismiss (ECF Nos. 23 and 24), but also **GRANTS** Plaintiff's request to

amend its Complaint.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 12, 2023                                    RUDOLPH CONTRERAS
                                                             United States District Judge